[Cite as *Clark v. Clark*, 2015-Ohio-3818.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HENRY COUNTY


TINA M. CLARK KNA DAUGHERTY,

    PLAINTIFF-APPELLANT,              CASE NO. 7-15-09

    v.

DAVID B. CLARK,                  O P I N I O N

    DEFENDANT-APPELLEE.


**Appeal from Henry County Common Pleas Court
Domestic Relations Division
Trial Court No. 00DR168**

**Judgment Affirmed**

**Date of Decision: September 21, 2015**


**APPEARANCE:**

    *Tina M. Clark,* **Appellant**

**ROGERS, P.J.**

{¶1} Plaintiff-Appellant, Tina Clark, n.k.a. Tina Daugherty, appeals the judgment of the Court of Common Pleas of Henry County, Domestic Relations Division, adopting the Child Support Enforcement Agency's ("CSEA") recommendations, which modified the child support payment of Defendant-Appellee, David Clark. On appeal, Tina argues that the trial court abused its discretion by failing to properly impute additional income to David for the 2013 calendar year. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} Tina and David were married in August 1998 and have one minor child, A.C. In January 2002, Tina and David divorced. Tina was named the residential parent and legal custodian of A.C., and David was required to pay child support in the amount of $227.48 per month.

{¶3} In November 2004, the trial court modified David's child support obligation and required him to pay $426.92 per month.

{¶4} In 2008, Tina moved the court to modify David's child support obligation. In June 2008, David's child support obligation was modified to $554.67 per month.

{¶5} David's child support obligation was modified again in May 2009 to $371.89 per month when health insurance was provided and $341.69 plus cash medical of $64.58 per month when health insurance was not provided.

{¶6} In July 2012, Tina moved to modify David's child support obligation again. Her request was denied as the child support computation resulted in an amount that was not at least a 10% change from the previous order.

{¶7} In April 2014, an administrative review was conducted to determine whether David's obligation would be modified. CSEA initially recommended that David's support be modified to $316.16 per month when health insurance was provided and $285.55 and $77.42 cash medical when health insurance was not provided. Tina objected to this amount and requested a hearing. After the hearing, CSEA found that David's income was approximately $39,479. It then used the child support worksheet and recommended that David's obligation be modified to $448.44 per month when health insurance was provided and $427.35 and $77.42 cash medical when health insurance was not provided. Tina objected to this finding and appealed to the Henry County Court of Common Pleas. At this hearing, the following testimony was heard.

{¶8} Tina testified that during the first week of December 2008 she received a phone call from David. According to Tina, David told her that he was now unemployed and would not be making $100,000 a year anymore. She

testified that soon after this phone call, David filed for a child support modification. Tina also stated that she always believed that David was lying about his actual income, but had no proof at the time to challenge it.

{¶9} Cheryl McCain was the next witness to testify. McCain testified that she dated David during 2002-2010. She also stated that she had a civil protection order in effect against David. She further testified that while she was dating David she was also an employee of Global Welding Services, LLC, ("Global Welding") a business solely owned and operated by David. McCain testified as to David's billing rate and said that he would bill $50 an hour for his services. This amount only included David's services and did not account for any of the necessary materials. These were billed separately according to McCain. Further, she testified that he charged $25 an hour for another employee depending on the job.

{¶10} McCain also testified that she helped gather the necessary information to hand over to David's accountant for tax purposes. She stated that David would charge nearly everything to the business account, and then she would go back at the end of the year and determine which charges were business expenses and which were personal expenses. She explained that she would then turn her determination of David's yearly income over to David who would then determine if that amount was too high or too low. McCain stated that if David

thought the income was too high, then he would tell her to add certain personal expenses to the business expenses to lower his overall income.

{¶11} On cross-examination, McCain admitted that she had no knowledge about David's financial affairs after 2009. McCain testified that up until 2008, she was paid $9 an hour by Global Welding. But after that, she no longer received any monetary compensation. She also stated that after 2008, the business really started to struggle and they did not work as many hours or jobs in the following years.

{¶12} David, by way of cross-examination, was the final witness to testify. David testified that at his most recent job, he was only being paid $25 an hour with the employer absorbing the cost of all the supplies. He also stated that he received unemployment benefits, but did not remember if it was during a time while he was working. David vehemently denied Tina's allegation regarding the December 2008 phone call.

{¶13} On direct examination, David testified that the only "certification" he had was from a local vocational school. David explained that this "certification" was meaningless because it was not awarded by the American Welding Association. To receive a certification through the American Welding Association, David testified that one must first pay a $5,000 fee to take a test and then pass the test before receiving a certificate. David stated that there were

somewhere between 15 to 20 certifications available through the American Welding Association.

{¶14} David explained that he considered himself a "farm welder." He testified that he works for local farmers and fixes gates and fences. He can also perform concrete work. He testified that he cannot weld pipelines or other similar projects that produce higher profits because he lacks the certifications to do so.

{¶15} David testified that his breakup with McCain was very heated. The two were constantly arguing and fighting over money, and during this time he started dating his current wife.

{¶16} David also testified that due to the nature of his failing business, he decided to change the name of his company to Global Industrial Maintenance in order to generate more business. He explained that he had tried different advertising strategies, but nothing seemed to work. By changing the name, he hoped to show other people how his business could provide more than just welding services. Currently, the only employees of the company are David and his wife. Neither receives a salary or health insurance from the business. David testified that his only source of income is the net income of Global Industrial Maintenance. He also stated that sometimes he has to hire subcontractors that charge for their work.

{¶17} David testified that his yearly work schedule is never a constant 40 hours a week, 50 weeks a year schedule. Rather, it depends on the amount of work coming into the business. At the time of the hearing, the only job he had worked on was his current project, which was to wrap up in the following week. He explained that there were no other projects lined up in the future.

{¶18} David stated that he currently charges a flat rate of $75 an hour. This includes any costs associated with the job, including supplies and equipment. He testified that his current project is located more than two and a half hours from his residence and, to save money, he stays in a trailer at the worksite with his wife for the duration of the project.

{¶19} David also authenticated his federal tax returns for the years 2011-2013, which were entered as exhibits. In 2011, David reported an adjusted gross income of $21,328. In 2012, David reported an adjusted gross income of $26,024. In his amended 2013 return, he reported an adjusted gross income of $17,878.[1]

{¶20} David testified that after the most recent CSEA hearing, the agency revised his most recent income to $39,479. David stated that he did not agree that he made that much, but nonetheless chose not to object to the finding.

{¶21} On re-cross-examination, David testified as to how certain charges, which seemed personal in nature, were business expenses. He confirmed that he

---

[1] David explained that he was forced to amend his 2013 return because his accountant had failed to report an additional amount of income. He stated that he fired his accountant and hired someone new to file the amended return.

charges everything out of his business account, but then removes all personal expenses for income reporting purposes.

{¶22} In July 2014, the magistrate issued a decision, in which he determined that the administrative hearing officer's decision was just and appropriate. Thus, the magistrate adopted the administrative hearing officer's decision in full. Specifically, the magistrate found that it was impossible to find out exactly how the officer came up with the $39,479 amount, but nonetheless found the amount to appropriate. The magistrate also found that Tina's claim that David's adjusted gross income was $100,000 was unfounded. It stated that David had never even come close to earning that much. It also found the testimony of both Tina and McCain to be unreliable since both had reasons to be angry with David.

{¶23} On August 15, 2014, Tina filed objections to the magistrate's decision. In her filing, Tina argued that the magistrate erred by failing to find the testimonies of Tina and McCain to be more credible than David's. Further, she argued that although she agreed that an imputed income was necessary, she did not agree with the final figure that was adopted by the magistrate.

{¶24} On August 25, 2014, the trial court reviewed the evidence in the record, adopted the magistrate's decision, and overruled Tina's objections. Tina filed her notice of appeal on September 23, 2014. On April 13, 2015, we

dismissed the appeal for lack of a final appealable order. *Clark v. Clark*, 3d Dist. Henry No. 7-17-13, 2015-Ohio-1420, ¶ 11. Specifically, we found that the trial court's August 25, 2014 entry "failed to set forth a specific child support amount regarding David's obligation." *Id.* at ¶ 10.

{¶25} The trial court issued an amended judgment entry on May 4, 2015. In its entry, the trial court ordered that David pay: $448.44 per month for child support when health insurance is provided; $427.35 per month for child support when health insurance is not provided; and $77.42 per month for medical support if health insurance is not provided.

{¶26} Tina filed this timely appeal, presenting the following assignment of error for our review.

### *Assignment of Error*

**THE COURT OF COMMON PLEAS OF HENRY COUNTY, OHIO ERRED IN FAILING TO IMPUTE AN INCOME TO DAVID CLARK THAT WAS CONSISTENT WITH HIS ADMITTED EARNING ABILITY AS ADMITTED AND SHOWN BY THE EVIDENCE, AFTER DAVID CLARK'S PRIOR INCOME INFORMATION PROVIDED TO CSEA WAS INCORRECT AND INCONSISTENT WITH HIS ACTUAL INCOME**

{¶27} In her sole assignment of error, Tina argues that the trial court erred by adopting the magistrate's decision. Specifically, she argues that because David lied about his actual income to CSEA his income should be imputed using his hourly rate without any deduction for business expenses. We disagree.

{¶28} A trial court has considerable discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. *Pauly v. Pauly,* 80 Ohio St.3d 386, 390 (1997). Likewise, a trial court's adoption of a magistrate's decision is reviewed under an abuse of discretion standard. *Marchel v. Marchel,* 160 Ohio App.3d 240, 243, 2005-Ohio-1499 (8th Dist.). An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶29} Before computing child support, the trial court must determine each parent's income. *Drummer v. Drummer*, 3d Dist. Putnam No. 12-11-10, 2012-Ohio-3064, ¶ 24, citing *Thacker v. Thacker*, 3d Dist. Marion No. 9–10–26, 2010–Ohio–5675, ¶ 55. Where the calculation of child support involves a parent who is unemployed or underemployed, the trial court must consider the parent's gross income and, relevant to the instant case, the parent's potential income, R.C. 3119.01(C)(5)(b), which is income the parent would have earned if he or she had been fully employed. R.C. 3119.01(C)(11)(a). In determining the parent's potential income and whether it may impute that income, the trial court must engage in a two-part analysis. *Theurer v. Foster–Theurer*, 12th Dist. Warren Nos. CA2008–06–074, CA2008–06–083, 2009–Ohio–1457, ¶ 83, citing *Badovick v. Badovick*, 128 Ohio App.3d 18, 23 (8th Dist.1998). First, the trial court must

determine whether the parent is voluntarily unemployed or underemployed. *Id.*; *see also Smart v. Smart,* 3d Dist. Shelby No. 17–07–10, 2008–Ohio–1996, ¶ 21. If the trial court determines that the parent is voluntarily unemployed or underemployed, then the potential income to be imputed to the parent must be determined in accordance with the factors enumerated under R.C. 3119.01(C)(11)(a). *Theurer* at ¶ 83.

{¶30} Under R.C. 3119.01(C)(11)(a):

Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:

(i)     The parent's prior employment experience;

(ii)    The parent's education;

(iii)   The parent's physical and mental disabilities, if any;

(iv)    The availability of employment in the geographic area in which the parent resides;

(v)     The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi)    The parent's special skills and training;

(vii)   Whether there is evidence that the parent has the ability to earn the imputed income;

(viii)  The age and special needs of the child for whom child support is being calculated under this section;

(ix)    The parent's increased earning capacity because of experience;

(x)     The parent's decreased earning capacity because of a felony conviction;

(xi)    Any other relevant factor.

**{¶31}** As an initial matter, we note that Tina's contention is limited to the amount of imputed income. Tina does not challenge the finding that David was underemployed. Accordingly, our review is limited to determining whether the trial court abused its discretion in finding that $39,479 was a proper amount to be imputed to David.

**{¶32}** Here, CSEA calculated David's income to be $39,479. This amount was later adopted by both the magistrate and the trial court. While David does not object to this amount, Tina believes his income to be greater. Specifically, she contends that the court should have used either the $25 or $50 per hour figure that David admitted he has charged customers in the past. She states that if you take these figures and assume David works a 40 hour work week and a 50 work week calendar, then the proper income amount to be attributed should be between $50,000 and $100,000. She argues that using his admitted hourly rate is more relevant given that it is specific to David's actual job.

**{¶33}** Both parties seem to agree that the $39,479 figure was based off of the average hourly salary of a welder in Northwest Ohio, which was approximately $19 an hour. *See* R.C. 3119.01(C)(11)(a)(v). Additionally, the

magistrate found that David possesses no special skills or training since he does not hold any certificates in welding other than a certificate from a local vocational school. *See* R.C. 3119.01(C)(11)(a)(vi). The magistrate also found that he has never come close to an adjusted gross income of what Tina asserts is the case. *See* R.C. 3119.01(C)(11)(a)(i), (vii). Finally, the magistrate found that the testimony of McCain was unreliable, which is also a relevant factor. *See* R.C. 3119.01(C)(11)(a)(xi).

**{¶34}** Since the magistrate based its decision on the relevant factors listed in R.C. 3119.01(C)(11)(a), we cannot say that the trial court abused its discretion when it adopted the magistrate's decision.

**{¶35}** Accordingly, Tina's sole assignment of error is overruled.

**{¶36}** Having found no error prejudicial to Tina in the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**