[Cite as *Stocker v. Stocker*, 2017-Ohio-8434.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY**


**JENNIFER L. STOCKER,**

    **PLAINTIFF-APPELLEE,**                 **CASE NO. 5-17-11**

    **v.**

**HANS S. STOCKER,**                     **O P I N I O N**

    **DEFENDANT-APPELLANT.**


**Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2014-DR-340**

**Judgment Affirmed**

**Date of Decision: November 6, 2017**


**APPEARANCES:**

    *Jose M. Lopez* **for Appellant**

    *Bret A. Spaeth* **for Appellee**

**SHAW. J,**

{¶1} Defendant-appellant, Hans S. Stocker, appeals the April 19, 2017 Amended Judgment Entry/Decree of Divorce issued by the Hancock County Court of Common Pleas, Domestic Relations Division, granting him a divorce from plaintiff-appellee, Jennifer L. Stocker. On appeal, Hans argues that the trial court erred in accepting an appraisal of the marital residence submitted by Jennifer, in accepting the value his expert assigned to the parties' business, and in failing to apply the $150,000 combined income level cap in determining his child support obligation.

*Facts and Procedural History*

{¶2} The parties were married on May 31, 1997. Three children were born during the marriage in 1998, 2001, and 2004.

{¶3} In 2010, the parties created Norville Enterprises, LLC ("Norville Enterprises"), an entity which owns a franchised operation of Adam and Eve, an adult novelty retail store. Even though the parties owned the business together, it is undisputed that Jennifer operated the business on a day-to-day basis.

{¶4} On October 9, 2014, Jennifer filed a complaint for divorce alleging the parties to be incompatible. Hans timely filed an answer and a counterclaim for divorce on the same ground.

**{¶5}** The case proceeded to a final evidentiary hearing before the magistrate on October 22 and 23, 2015. At issue between the parties was the allocation of parenting time and child support, the division of certain personal property, the value and allocation of the marital residence, and the value of Norville Enterprises, of which the parties agreed that Jennifer would retain sole ownership after the divorce.

**{¶6}** On February 17, 2016, the magistrate issued a decision. Relative to the issues raised on appeal, the magistrate recommended that Jennifer be designated the residential parent of the children with Hans paying $1,276.71 per month in child support, plus processing and with provision for cash medical support. In reaching his recommendation regarding child support, the magistrate found that it was just and appropriate not to deviate from the child support worksheets, despite the fact that the parties' combined annual income exceeded $150,000. *See* R.C. 3119.04(B).

**{¶7}** At the final divorce hearing, both Jennifer and Hans submitted professional appraisals of the marital home. The magistrate chose to accept the appraisal submitted by Jennifer which valued the home at $290,000. The magistrate recommended that Jennifer retain possession of the marital home, subject to the $180,521.70 mortgage. With respect to the value of Norville Enterprises, the magistrate heard testimony from a CPA, with a certified specialization in business valuation, who calculated the value of Norville Enterprises to be $337,757 using an "income approach" to valuation. After allocating the remaining marital property,

the magistrate recommended that Jennifer pay Hans $57,589.13 to equalize the division of property between the parties.

{¶8} Hans timely filed objections to the magistrate's decision, raising the issues of the magistrate's recommendation not to apply the $150,000 combined income cap on the child support obligation and the values assigned to the marital home and the business.

{¶9} On March 2, 2017, the trial court overruled Hans' objections to the magistrate's decision, and on April 19, 2017, the trial court issued an Amended Judgment Entry/Decree of Divorce issuing orders consistent with the recommendations in the magistrate's decision.

{¶10} Hans filed this appeal, asserting the following assignments error.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ERRED AND ACTED CONTRARY TO LAW WHEN IT DETERMINED THE VALUE OF THE MARITAL RESIDENCE TO BE $290,000.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT ERRED IN ALLOCATING THE ASSETS AND DEBTS OF THE BUSINESS, NORVILLE ENTERPRISES, LLC.**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT ERRED BY FAILING TO CAP THE PARTIES' GROSS INCOME AT $150,000 IN ITS DETERMINATION OF THE CHILD SUPPORT ORDER.**

*First and Second Assignments of Error*

**{¶11}** At the outset, we elect to address Hans' first and second assignments of error together due to the fact that they both challenge the valuation of certain marital assets in the trial court's equitable division of property.

*Standard of Review*

**{¶12}** An appellate court generally reviews the overall appropriateness of the trial court's property division in divorce proceedings under an abuse-of-discretion standard. *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981). An abuse of discretion connotes that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). In order to make an equitable division of property, the trial court should first determine the value of the marital assets. *See Eisler v. Eisler*, 24 Ohio App.3d 151, 152 (8th Dist. 1985).

**{¶13}** In performing this function, the trial court has broad discretion to develop some measure of value. *See Berish v. Berish*, 69 Ohio St.2d 318 (1982). Thus, "[t]he valuation of marital assets is typically a factual issue that is left to the discretion of the trial court." *Roberts v. Roberts*, 10th Dist. Franklin No. 08AP-27, 2008-Ohio-6121, ¶ 18, citing *Berish*, *supra*. Generally, as an appellate court, we

are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Tennant v. Martin-Auer*, 188 Ohio App.3d 768, 2010-Ohio-3489 ¶ 16 (5th Dist.).

1.    *The Marital Home*

{¶14} In his first assignment of error, Hans claims that the trial court erred in adopting the magistrate's recommendation to value the marital home at $290,000. At the final divorce hearing before the magistrate, the parties each submitted as an exhibit a professional appraisal of the marital home. The appraisal submitted by Jennifer assessed a value to the home of $290,000, whereas the appraisal submitted by Hans' valued the marital home at $323,000. The magistrate stated the following in his decision regarding the value of the marital home.

> **Both appraisals consider comparable sales and determine a value for the property that is within the range of the comparable sales. [Hans' appraisal] indicates that the house has gross living area of 2,676 square feet, which calculates to $120.70 per square foot. [Jennifer's appraisal] indicates that the house has gross living area of 2,516 square feet, which calculates to $115.26 per square foot. The Hancock County Auditor's Property Card that is attached to [Hans' appraisal] indicates that the house has 2,516 square feet of living area. [Hans' appraisal] used comparable homes one of which sold on September 26, 2014, two sold on January 14, 2015, and two were still pending sale on May 12, 2015. [Jennifer's appraisal] used comparable homes which sold on August 25, 2014, May 30, 2014, and August 8, 2014. The comparable homes used by [Jennifer's appraisal] have sale dates closer in time to the ending date of the marriage, October 9, 2014. After consideration of the evidence related to the real estate,**

**[Jennifer's appraisal] of $290,000 is the most accurate available value for the real estate.**

(Doc. No. 127 at 20-21).

{¶15} In overruling Hans' objection to the magistrate's decision, the trial court found that the magistrate's recommendation to accept Jennifer's appraisal, which assigned a value of $290,000 to the marital home, was supported by sufficient credible evidence. On appeal, Hans highlights the fact that at the final divorce hearing he stated that he would be willing to purchase the home at $323,000, the value contained in his appraisal, which he claims would "maximize" the value of the marital home. He therefore contends that the value stated in his appraisal was supported by the greater weight of the evidence.

{¶16} However, as previously noted, the trial court was in the best position to assess the credibility of the evidence and attribute the weight to be given accordingly. Clearly, the trial court did not find Hans' statements about purchasing the home at his higher appraisal value to be more persuasive than Jennifer's appraisal, which relied upon the same amount of gross living area square footage as stated in the Auditor's property card and used comparable sales closer in time to the termination of marriage. Thus, we conclude the record reveals that the trial court's adoption of the magistrate's recommended value of $290,000 for the marital home was supported by relevant, competent, and credible evidence and, thus, did not

constitute an abuse of discretion. Accordingly, we overrule the first assignment of error.

## 2.     *Norville Enterprises, LLC*

{¶17} In his second assignment of error, Hans challenges the trial court's conclusion valuing Norville Enterprises at $337,757 as being against the manifest weight of the evidence and an abuse of discretion. Hans maintains that in arriving at its conclusion, the trial court improperly relied upon the valuation provided by business valuation expert, Mark Hoge ("Hoge"), who used the "income approach" to valuing the business. Specifically, Hans claims this valuation method failed to separately include the assets of the business in the parties' equitable distribution of property.

{¶18} At the final divorce hearing, Hans presented the testimony of Hoge and submitted Hoge's report as an exhibit. According to Hoge, the cash flow that Norville Enterprises generates is more valuable to a perspective buyer than the assets its holds, which is the reason why the income approach valuing the cash flow, as opposed to a market approach or an asset approach, was his chosen method of valuation. Hoge further explained his reasoning for determining the income approach to be the appropriate method of valuation in this case.

> **So I did an initial search of our data base for similar market transactions and came up empty, which is not uncommon.[1] I looked at the assets, which essentially was comprised of the inventory and cash, some furniture and fixtures. Less the company's debt and I quickly realized that, you know, the value of the business was in the cash flow that it generates and not the assets it owns.**

(Doc. No. 141 at 287). Based upon this method of valuation, Hoge concluded that the fair market value of Norville Enterprises was $337,757. Notably, Jennifer presented the testimony of Sam Robinson, a CPA who critiqued Hoge's evaluation and valued the business at $204,881, while still utilizing the income approach method, but adjusting certain factors that impacted the overall value of the cash flow.

{¶19} On appeal, Hans takes issue with his own expert using the income approach method because it did not take into account the assets owned by Norville Enterprises; specifically, the $50,520.29 in a savings account and the $34,479.32 in a checking account. Hans claims that he is entitled to half of these assets in the equitable distribution of the parties' marital property. For instance, Hans claims that he is entitled to half of the amounts in business checking and savings accounts, which total $42,024.97. For reasons unknown, Hans does not include the values of other assets of the business such as the inventory, fixtures, furniture and Jennifer's goodwill in his argument.

---

[1] Hoge clarified that the database he used was called "Biz Comps," which is the most widely used database in business valuations. He explained that it is difficult to collect data on private company transactions.

{¶20} This notwithstanding, the record demonstrates that Norville Enterprises was the largest martial asset. Hans' argument seems counterintuitive considering the fact that the parties agreed Jennifer would retain the business and that Hoge testified the income approach provided for the most value. Thus, the record suggests that the income approach garnered a higher value than an asset based approach to valuation, which in turn increased the amount Jennifer was ordered to pay Hans to equalize the distribution of marital property, despite Jennifer's efforts to provide evidence to reduce the value of the business. Moreover, Hans has not provided any alternative value for the business using a different approach.

{¶21} Nevertheless, "Ohio courts have not specified that only one method of valuation is appropriate when dividing marital property." *Herrmann v. Herrmann*, 12th Dist. Butler No. CA99-01-006 (Nov. 6, 2000), citing *Clymer v. Clymer*, 10th Dist. Franklin No. 99AP-924 (Sept. 21, 2000). Rather, an equitable division of marital property depends upon the totality of the circumstances such that a flat rule for valuation is not appropriate in a property division. *Herrmann*, citing *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 180 (1990). "When parties present substantially different valuations of an asset, the trial court is free to believe all, part, or none of any witnesses' testimony. *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, ¶ 27 (3d Dist.), quoting *Covert v. Covert*, 4th Dist. No. 03CA778, 2004-Ohio-

3534, ¶ 29. Here, the trial court had before it credible evidence establishing the value of Norville Enterprises at $337,757. Although Hans contends that in adopting Hoge's valuation, the trial court failed to consider the value of specific assets, we find no merit to Hans' argument on appeal.

{¶22} The trial court heard testimony supporting Hoge's position for using the income approach method of valuation to arrive at the best value for the business, which by design does not take into consideration the assets of the business. The trial court was in the best position to weigh the credibility of Hoge's testimony. We cannot say that the trial court clearly lost its way or created a manifest miscarriage of justice, nor did it abuse its discretion in finding Hoge's income approach valuation credible. Accordingly, we overrule the second assignment of error.

*Third Assignment of Error*

{¶23} In his third assignment of error, Hans argues that the trial court erred in failing to apply the $150,000 combined income level cap when calculating his child support obligation.

*Standard of Review*

{¶24} "A trial court has considerable discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order." *Clark v. Clark*, 3d Dist. Henry No. 7-15-09, 2015-Ohio-3818, ¶ 28, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). An abuse of discretion

"implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶25} It is undisputed that the parties' combined yearly gross income exceeds $150,000. Under this circumstance, the court must calculate the child support obligation on a case-by-case basis and must consider the needs and the standard of living of the children and of the parents. *Guertin v. Guertin*, 10th Dist. Franklin No. 06AP-1101, 2007-Ohio-2008, ¶ 4, citing R.C. 3119.04(B).

{¶26} R.C. 3119.04(B) provides that "[i]f the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." R.C. 3119.04(B). The statute further provides that "[t]he court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount." *Id.* The statute mandates that should the court make

"such a determination, it shall enter in the journal the figure, determination, and findings." *Id.*

{¶27} Here, the trial court adopted the magistrate's recommendation not to deviate from the child support worksheets and cap the parties' combined gross income at $150,000 for purposes of determining child support. Specifically, the magistrate made the following findings in his decision with respect to child support.

> **The Magistrate has considered the children's needs and standard of living, the parties' standard of living, and the factors found in R.C. 3119.23. In this case the parties have reasonable vehicles, a substantial home, and few luxuries. They maintained a comfortable and not an extravagant lifestyle. The lifestyle permitted the children to participate in swimming and other activities, and permitted [the oldest child] to have a used vehicle when he began to drive. * * * The division of property is a substantially equal division of property. The parties do not have income producing separate property. With the cost of maintaining two households, the children will not enjoy the same standard of living as they would have enjoyed had they continued to live with both parents in a single household. However, with the funds available between the parties, a reasonable standard of living can be maintained for the children and both parties. * * * The [child support] award should contemplate that [Jennifer] will pay the children's cost of participating in their swimming and other sporting activities. The amount of child support shown on the worksheets would maintain a reasonable standard of living and would be just and appropriate for the children. The Magistrate concludes that establishing [Hans'] child support obligation at $15,320.51 per year, being $1,276.71 per month, is just and appropriate, will meet the needs of the children, will maintain the children with an appropriate standard of living in both households, and will serve the best interest of the children.**

(Doc. No. 127 at 16-17).

{¶28} In overruling Hans' objection to the magistrate's decision, the trial court reasoned "while the parties were living together their *combined* incomes were sufficient to support a 'comfortable and non-extravagant' lifestyle. It is obvious that some of that income is now going to be needed to support the extra expense of *two* households. Additionally, it is supported that there is a significant expense associated with the children's swimming and other sports activities, in addition to the cost of some medical issues." (Doc. No. 201 at 5) (emphasis sic). The trial court further noted that "the parties have not accumulated significant savings, except for retirement savings, during their marriage, evidently using their combined incomes to support a family of five." (Id.).

{¶29} On appeal, Hans argues that the trial court erred in failing to apply the $150,000 combined gross income level cap and deviate from the child support worksheets. Specifically, he maintains that because the parties or children "did not maintain a life of luxury prior to the divorce" the children support award should have been capped. (Appt. Br. at 11). However, in making this argument, Hans overlooks the trial court's decision not to deviate from the child support worksheet was based upon its conclusion that the worksheet support amount was just and appropriate to maintain a *reasonable* standard of living for the children that they were accustomed to when the parties' resources were pooled together to support one household. There was significant testimony in the record regarding all three

children's involvement with a travelling swim club. The record indicates that with the children's participation in this sport, the parties' not only incurred substantial expenses for pool fees and specialized swim attire, but also incurred incidental expenses related to frequent travel statewide and on the rare occasion nationally.

**{¶30}** This rationale in addition to the other reasons outlined by the magistrate and trial court in their findings are supported by the record. Accordingly, we do not find that the trial court abused its discretion in adopting the magistrate's recommendation not to deviate from the child support worksheets. The third assignment of error is overruled.

**{¶31}** Based on the foregoing, the judgment of the Hancock County Court of Common Pleas, Domestic Relations Division, is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**

Case No. 5-17-11