[Cite as *Freytag v. Freytag*, 2024-Ohio-2403.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

WILLIAM FREYTAG,

    PLAINTIFF-APPELLANT,

  v.

JOYCE FREYTAG,

    DEFENDANT-APPELLEE.

CASE NO. 17-23-14

O P I N I O N

**Appeal from Shelby County Common Pleas Court
Domestic Relations Division
Trial Court No. 20 DV 000140**

**Judgment Affirmed**

**Date of Decision:  June 24, 2024**

**APPEARANCES:**

    *Todd D. Severt* and *Bonnie-Blue T. Sullivan* for Appellant

    *Quentin M. Derryberry II* for Appellee

**WILLAMOWSKI, P.J.**

{**¶1**} Plaintiff-appellant William J. Freytag ("William") appeals the judgment of the Domestic Relations Division of the Shelby County Court of Common Pleas, arguing that the trial court erred in valuing and classifying certain assets; appointing an expert to conduct valuations; failing to grant a continuance; and finding him to be physically competent to represent himself. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{**¶2**} William and Joyce E. Freytag ("Joyce") were married on January 14, 1989. On June 24, 2020, William filed a complaint for divorce. The assets subject to this litigation included several companies: Albert Freytag, Inc. ("AFI"); J&B Land Company, Ltd. ("J&B Land"); and 493 Realty Services, LLC ("493 Realty Services"). The final hearing was initially set for April 27, 2021 but was rescheduled to November 23, 2021.

{**¶3**} During the final pretrial hearing on November 12, 2021, the magistrate discovered that the value of a number of substantial assets in the marital estate had not been assessed and that documents that could establish the value of these assets had not yet been produced. Concluding that a decision could not be rendered in the absence of such information, the trial court appointed a certified public accountant,

Terry L. Yoho ("Yoho"), to conduct valuations for the assets in the marital estate and then continued the final hearing.

{¶4} On August 31, 2022, William's lawyer filed a motion to withdraw as counsel on the grounds that "the attorney-client relationship ha[d] become offensive and combative." (Doc. 189). This motion was granted on September 15, 2022. On September 28, 2022, the trial court scheduled the final hearing for January 23, 2023. Yoho submitted her final report on November 28, 2022. This report concluded that AFI had a value of $4,836,000.00; that J&B Land owned two properties worth $314,620.00; that 493 Realty Services held properties worth $215,000.00; and that the marital estate was worth a total of $12,233,188.00.

{¶5} On January 23, 2023, William appeared at the final hearing without an attorney and indicated that he intended to proceed pro se. Yoho, Joyce, and William testified at the hearing. William also called a certified public accountant working with AFI, Larry E. Elsner ("Elsner"), as a witness. In a decision issued on March 7, 2023, the magistrate determined that AFI, J&B Land, and 493 Realty Services were marital assets that were worth the amounts stated in Yoho's report. William then retained a new attorney. Both parties then filed objections to the magistrate's decision. On August 18, 2023, the trial court issued a judgment entry overruling the objections of the parties and granting a divorce.

{¶6} William filed his notice of appeal on September 14, 2023 and raises the following seven assignments of error:

**First Assignment of Error**

**The trial court erred in finding the equipment located at 4625 Hardin-Wapak Road, Sidney, Ohio has a value of $400,000.00.**

**Second Assignment of Error**

**The trial court erred in failing to award Appellant his separate property interest in the Prenger account ending in 4293.**

**Third Assignment of Error**

**The trial court erred in failing to award Appellant his separate property interest in Albert Freytag, Inc.**

**Fourth Assignment of Error**

**The trial court erred in failing to award Appellant his separate property interest in the J&B Land Company, Ltd.**

**Fifth Assignment of Error**

**The trial court erred in relying upon the court-appointed expert's valuation.**

**Sixth Assignment of Error**

**The trial court erred in denying Appellant his request for a continuance.**

**Seventh Assignment of Error**

**The trial court erred in finding Appellant to be physically competent to be self-represented.**

We will consider the assignments of error in the following order: sixth, seventh, second, third, fourth, first, and fifth.

*Sixth Assignment of Error*

**{¶7}** William asserts that the trial court abused its discretion by failing to grant him a continuance.

Legal Standard

**{¶8}** In evaluating a ruling on a motion for a continuance, an "appellate court must 'apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party.'" *Ham v. Ham*, 2010-Ohio-1262, ¶ 11 (3d Dist.), quoting *Burton v. Burton*, 132 Ohio App.3d 473, 476 (1999).

> In considering a motion for a continuance, a court should consider (1) the length of the delay requested; (2) whether other continuances have been requested and granted; (3) any inconvenience to parties, witnesses, opposing counsel, and the court; (4) whether the requested delay is for a legitimate purpose or is instead dilatory, purposeful, or contrived; (5) whether the defendant contributed to the situation that gives rise to the motion for a continuance; and (6) other relevant factors, depending on the unique facts of a case.

*Bradshaw v. Bradshaw*, 2022-Ohio-2448, ¶ 9 (3d Dist.). "It is well established under Ohio law that the decision to grant or deny a continuance lies within the sound discretion of the trial court." *Fiocca v. Fiocca*, 2005-Ohio-2199, ¶ 6 (10th Dist.). An abuse of discretion is more than an error of judgment but is present where a determination is arbitrary, capricious, or unreasonable. *Schwieterman v. Schwieterman*, 2020-Ohio-4881, ¶ 12 (3d Dist.).

Legal Analysis

**{¶9}** In this case, William did not file a formal request for a continuance with the trial court.[1] At the final hearing, he asserted that Yoho's report was based upon "incomplete" information and mentioned he had wanted a continuance or "extension" to compile better business records. (Tr. 24, 106). However, Elsner stated that AFI's business records were a "[s]hambles" and testified about significant portions of financial data that were not available. (Tr. 355). His testimony contains no indication that current or complete records could be available in the near future. The record contains no indication that William could have obtained any such information if a continuance had been granted.

**{¶10}** Further, the final hearing was originally scheduled for April 27, 2021; was then delayed until November 23, 2021; and then rescheduled for January 23, 2023. These delays were largely occasioned by issues with discovery; the availability of various records; and the need to give Yoho time to value the marital assets. Thus, the record indicates that the trial court repeatedly sought to accommodate these ongoing discovery issues but contains no indication that a continuance would have accomplished anything other than further delay.

---

[1] On December 22, 2022, William filed a pro se motion to transfer venue that mentioned his difficulties in obtaining various business records. At the final hearing, he mentioned that he had asked for a continuance. This appears to be a reference to his earlier motion to transfer. In considering the objections to the magistrate's decision, the trial court refused to "consider this motion [to transfer] to be one for continuance." (Doc. 335). Nonetheless, we will still consider the appropriateness of a continuance in this situation.

{¶11} On appeal, William argues that the trial court should have granted him a continuance to obtain counsel. But his statements at the final hearing indicate that he wanted a continuance to compile more recent business records. William was initially represented in this case, but his counsel filed a motion to withdraw five months before the final hearing. The motion to withdraw was granted over four months prior to the final hearing. Thus, William had several months to retain counsel, but the record contains no indication that he took any steps to secure representation.

{¶12} When William appeared at the final hearing without an attorney, the magistrate asked him if he was going to proceed pro se. In response, William affirmed that he intended to represent himself at the final hearing. The record does not suggest that he would have used any delay occasioned by a continuance to obtain counsel. Having examined the facts in the record, we find no indication that the trial court abused its discretion by not granting a continuance. The sixth assignment of error is overruled.

*Seventh Assignment of Error*

{¶13} William asserts that the trial court should have concluded that he was not physically competent to represent himself at the final hearing.

Legal Standard

{¶14} "The presumption of the law is that the action of the trial court is legal until the contrary affirmatively appears * * *." *Norviel v. Norviel*, 1987 WL 20295,

*3 (3d Dist. Nov. 24, 1987), quoting *City of Cleveland v. Whipkey*, 29 Ohio App.2d 79, 88 (1972).  The appellant has the "burden to affirmatively demonstrate to the appellate court that error has occurred in the action of the trial court."  *Isbell v. Isbell*, 1986 WL 1099, *2 (3d Dist. Jan. 15, 1986).  This involves "formulating an argument on appeal and supporting that argument with citations to the record and to legal authority."  *Kim v. Kim*, 2020-Ohio-22, ¶ 33 (9th Dist.), quoting *State v. Watson*, 2009-Ohio-330, ¶ 5 (9th Dist.).  An appellate court does not have a "duty to construct legal arguments to support an appellant's appeal."  *Walsh v. Walsh*, 2023-Ohio-1675, ¶ 11 (8th Dist.).

## Legal Analysis

**{¶15}** William appeared at the final hearing without an attorney and affirmed that he intended to represent himself.  He argues that the trial court should have found him physically incompetent to proceed pro se because, at the final hearing, others had to repeat themselves on several occasions after he indicated he could not hear their statements.[2]  In his brief, William has not identified any legal authority that would suggest that the trial court should have conducted a competency evaluation in such a situation or that would indicate that the trial court erred by permitting him to proceed pro se.  *See* App.R. 16(A)(7).

---

[2] The record does not indicate that any hearing issues that William may have had ultimately interfered with his ability to understand what was transpiring at the proceeding.  Once these unheard statements were repeated, William was able to respond appropriately.  The appellee also suggests that these hearing issues were related to the acoustics of the room by pointing to several other instances in which others in the room had to ask for statements to be repeated.  Tr. 27, 48, 66, 98, 115, 116, 128, 131, 140, 147, 278.

{¶16} As a general matter, "[a]ny person can choose to represent himself." *Penn v. Penn*, 1988 WL 122904, *1 (8th Dist. Nov. 17, 1988). Further, a "trial court may not mandate that a divorce litigant has an attorney." *McKenzie v. McKenzie*, 2013-Ohio-4859, ¶ 5 (3d Dist.), citing *Rue v. Rue*, 2006-Ohio-5131, ¶ (2d Dist.). On appeal, William has not demonstrated that the trial court erred by failing to stop him from choosing to do what he had a right to do. Because he has failed to carry the burden of affirmatively demonstrating that the trial court committed an error, the seventh assignment of error is overruled.

*Second Assignment of Error*

{¶17} William argues that the trial court improperly classified the $979,875.00 in Prenger Account #-4293 as a marital asset.

Legal Standard

{¶18} Under R.C. 3105.171, a two-step process generally governs the division of the assets between the parties to a divorce proceeding. *Lotz v. Lotz*, 2014-Ohio-5625, ¶ 11 (3d Dist.). First, the trial court must "classify the assets of the parties as marital or separate." *Kesler v. Kesler*, 2018-Ohio-5059, ¶ 8 (3d Dist.). Second, "the trial court must equitably allocate the marital and separate property." *Lotz* at ¶ 11.

{¶19} "Marital property generally includes all property acquired by either party during the marriage as well as the appreciation of separate property due to the labor, monetary, or in-kind contributions of either party during the marriage."

*Heimann v. Heimann*, 2022-Ohio-241, ¶ 64 (3d Dist.), quoting *Avent v. Avent*, 2006-Ohio-1861, ¶ 15 (6th Dist.). Separate property cannot be marital property. R.C. 3105.171(A)(3)(b). Under R.C. 3105.171(A)(6)(a), the following assets constitute separate property:

> (i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
>
> (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
>
> (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
>
> (iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;
>
> (v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial or postnuptial agreement;
>
> (vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;
>
> (vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

"The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). Further, as a general

matter, "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property."  R.C. 3105.171(H).

**{¶20}** "Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate."  *Reed v. Reed*, 2010-Ohio-4550, ¶ 8 (3d Dist.).  Further, "[i]f the parties contest whether an asset is marital or separate property, the asset is presumed to be marital property unless it is proven otherwise." *Baughman v. Baughman*, 2021-Ohio-2019, ¶ 4 (9th Dist.).  *Gregory v. Falcon,* 2023-Ohio-1741, ¶ 36 (5th Dist.); *Favri v. Favri*, 2021-Ohio-3588, ¶ 24 (7th Dist.); *Rinehart v. Rinehart*, 2024-Ohio-1221, ¶ 12 (10th Dist.); *Johnson v. Johnson*, 1999 WL 760978, *4 (12th Dist. Sept. 27, 1999).

**{¶21}** "The party seeking to establish that property is separate rather than marital bears the burden of proof, by a preponderance of the evidence, to trace the asset to separate property."  *Heimann* at ¶ 67, quoting *Tretola v. Tretola*, 2014-Ohio-5484, ¶ 45 (3d Dist.).  "The burden to prove the separate identity of property can be met with documents or testimony, but 'merely claim[ing] that the property * * * constitutes * * * separate property does not make it so.'"  *Kolar v. Kolar*, 2018-Ohio-2559, ¶ 29 (9th Dist.), quoting *Eikenberry v. Eikenberry*, 2010-Ohio-2944, ¶ 28 (9th Dist.).  "Preponderance of the evidence means the greater weight of the evidence that is necessary to destroy the equilibrium."  *Reed* at ¶ 10.

**{¶22}** In general, "[t]he separate property is retained by the party who obtained that particular asset regardless of whether the separate property was acquired before or during the marriage." *Kesler, supra,* at ¶ 8, citing R.C. 3105.171(D). "The marital property, on the other hand, is to be divided equally between the parties unless such a division would be inequitable." *Siferd v. Siferd*, 2017-Ohio-8624, ¶ 25 (3d Dist.), citing R.C. 3105.171(C). This is because "each spouse is considered to have contributed equally to the acquisition of marital property." *Heimann, supra*, at ¶ 64, quoting *Avent, supra,* at ¶ 15.

**{¶23}** "The trial court's classification of property as marital or separate is a factual determination" and is reviewed under a manifest weight standard. *Worden v. Worden*, 2017-Ohio-8019, ¶ 17 (3d Dist.). Accordingly, the classification of an asset will not be reversed if the record contains some competent, credible evidence that supports the trial court's determination. *Id*. "This highly deferential standard of review permits the affirmation of the trial court's judgment if there is 'even some evidence' to support the court's finding." *DeWitt v. DeWitt*, 2003-Ohio-851, ¶ 11 (3d Dist.), quoting *Mason v. Mason*, 2001-Ohio-2328, *1 (3d Dist. Dec. 5, 2001).

**{¶24}** Further, "a party proceeding pro se is held to the same procedural standards as other litigants that have retained counsel." *Henry v. Henry*, 2012-Ohio-655, ¶ 29 (3d Dist.). For this reason, pro se litigants "must comply with the rules of procedure and must accept the consequences of their own mistakes." *Baker v.*

*Mosler*, 2013-Ohio-4976, ¶ 7 (3d Dist.), quoting *Thrower v. Bolden*, 2012-Ohio-3956, ¶ 16 (8th Dist.).

Legal Analysis

**{¶25}** The record establishes that the parties disputed whether Prenger Account #-4293 was established before or during the marriage. The trial court noted that the only documentation that was submitted by the parties for this account "indicates the earliest dividend deposit to be January 18, 2005." (Doc. 335). While William asserted that this account was funded with monies inherited from his parents before his marriage to Joyce, he did not provide any documentation at the hearing that could support his contentions against Joyce's contentions. The trial court apparently chose not to rely upon William's unsupported representations and classified this account as marital property.

**{¶26}** On appeal, William points to the fact that only his name was listed on this account. But this fact does not establish that these funds are separate property because "the form in which title is held is not determinative of whether the property is separate or marital." *Eikenberry*, *supra*, at ¶ 22, citing R.C. 3105.171(H). *See Patridge v. Matthews*, 2001 WL 171011, *4 (12th Dist. Feb. 20, 2001) (having an investment account "in the name of one spouse individually or in the names of both spouses does not determine whether that property is marital or separate"). Since the trial court's determination is supported by some competent, credible evidence, we

conclude that William has not established that the trial court erred in classifying this account as marital. The second assignment of error is overruled.

*Third Assignment of Error*

{¶27} William argues that the trial court erred by classifying AFI as a marital asset.

Legal Standard

{¶28} We reincorporate the legal standard for asset classification as set forth under the second assignment of error.

Legal Analysis

{¶29} William argues that the trial court should have classified AFI as separate property.[3] Since the record establishes that the parties disputed the classification of this asset, William had the burden of establishing that AFI was separate property. *See Burkhart v. Burkhart*, 2013-Ohio-157, ¶ 8 (10th Dist.) ("The party seeking to establish an asset as separate property bears the burden of showing the origin and eligibility of the asset."). At the final hearing, statements from Joyce and William indicated that he purchased at least one half of the shares in AFI after his brother's passing in 2015. Joyce also testified that, during the marriage, she worked for AFI on an "as needed" basis but was not personally compensated for her contributions.

---

[3] In the final distribution of assets, William retained full ownership of AFI.

-14-

**{¶30}** Yoho testified that AFI's tax returns indicated that William held the shares in AFI and that William had told her that "he owned some shares [in AFI] prior to the marriage." (Tr. 37). However, Yoho stated that William "did not provide * * * a share journal or any other information that would support" this claim. (Tr. 37). While questioning Yoho, William asserted that the records from his first divorce would have shown that he owned one half of AFI before he married Joyce. But he did not submit any documentation to substantiate this claim.

**{¶31}** The trial court concluded that William failed to produce evidence that could establish that any portion of AFI was separate property and that "[m]erely claiming" that AFI was not a marital assets at the final hearing was not sufficient to carry the burden of establishing that it was separate property. (Doc. 335). *See Eikenberry*, *supra*, at ¶ 28. Having examined the evidence in the record, we conclude that the trial court's conclusion was based upon some competent, credible evidence. The third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶32}** William argues that the trial court erred in classifying J&B Land as a marital asset.

Legal Standard

**{¶33}** We reincorporate the legal standard for asset classification as set forth under the second assignment of error.

-15-

Legal Analysis

**{¶34}** The evidence in the record establishes that J&B Land was incorporated on December 19, 1996. Ex. 34. Further, the assets owned by this entity consisted of two real estate holdings. The property records submitted with Yoho's report indicated that J&B Land acquired these two assets in 2006 and 2018. Since J&B Land and its assets were acquired during the marriage, the trial court correctly presumed that these assets were marital. The trial court then noted that William did not present any "evidence to overcome" this presumption by tracing these purchases to separate property. (Doc. 335). Having examined the record, we conclude that the trial court's classification of J&B Land is supported by some competent, credible evidence. The fourth assignment of error is overruled.

*First Assignment of Error*

**{¶35}** William argues that the trial court erred in assigning a value of $400,000.00 to equipment that was stored at a location on Hardin-Wapak Road.

Legal Standard

**{¶36}** "The process of fashioning an equitable division of marital property will generally require a trial court to assign or adopt valuations for marital assets." *Mousa v. Saad*, 2019-Ohio-742, ¶ 13 (3d Dist.).

> In determining the value of assets, the trial court 'is not required to adopt any particular method of valuation.' *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 27 (3d Dist.). 'Rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances.' *Lotz v. Lotz*, 3d Dist.

-16-

> Auglaize No. 2-14-06, 2014-Ohio-5625, ¶ 18 quoting *Baker v. Baker*, 83 Ohio App.3d 700, 702, 615 N.E.2d 699 (9th Dist. 1992).

*Id.* at ¶ 13. Rather, a trial court must "have a rational, evidentiary basis for assigning value to marital property." *Novak v. Novak*, 2023-Ohio-2811, ¶ 19 (3d Dist.).

> 'The valuation of property in a divorce case is a question of fact.' *Schwarck v. Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 27. 'Accordingly, a trial court's decision pertaining to the valuation of property will be reviewed under a manifest weight of the evidence standard and will not be reversed so long as it is supported by some competent and credible evidence.' *Id.*

*Id.* at ¶ 12. "When parties present substantially different valuations of an asset, the trial court is free to believe all, part, or none of any witnesses' testimony." *Stocker v. Stocker*, 2017-Ohio-8434, ¶ 21 (3d Dist.), quoting *Covert v. Covert*, 2004-Ohio-3534, ¶ 29 (4th Dist.).

Legal Analysis

**{¶37}** At the final hearing, Yoho testified that the equipment at Hardin-Wapak Road was assigned a value of $400,000.00. Her testimony indicates that this valuation was not based on an assessment from a professional evaluator but was "based off of what Mr. Freytag believed it to be[.]" (Tr. 81). She affirmed that the figure of $400,000.00 was simply what "Mr. Freytag and his counsel decided it [the equipment] was worth[.]" (Tr. 80). William also assigned a value of $400,000.00 to this equipment on a table of his assets that was submitted during this litigation.

**{¶38}** Since the value assigned to this equipment came from William, he is ultimately arguing that the trial court erred by relying on the figure that he provided.

Further, in contesting this valuation, he has not identified any defects with the number that he supplied. *See Golan-Elliott v. Elliott*, 2017-Ohio-8524, ¶ 32 (3d Dist.). We conclude that the trial court's valuation is not against the manifest weight of the evidence. The first assignment of error is overruled.

*Fifth Assignment of Error*

**{¶39}** William asserts that the trial court should not have sua sponte appointed Yoho as an expert and that her valuations of AFI, J&B Land, and 493 Realty Services were incomplete or deficient.

Legal Standard

**{¶40}** We reincorporate the legal standards for the valuation and classification of property as set forth under the first and second assignments of error.

Legal Analysis

**{¶41}** William raises seven arguments under this assignment of error. First, he asserts that the trial court should not have appointed Yoho as an expert because Joyce did not file a timely answer.[4] William asserts that the trial court should have proceeded with an uncontested divorce instead of accepting Joyce's untimely answer and appointing an expert. But even if this matter had continued to proceed

---

[4] William filed a complaint on June 24, 2020. Joyce's attorney filed a notice of appearance on July 27, 2020. Thereafter, Joyce actively participated in the litigation. After Joyce filed an answer in January of 2021, William responded by filing a motion to dismiss. The trial court deemed Joyce's answer timely filed and denied William's motion to dismiss.

as an uncontested divorce, the record contains no indication that the magistrate would not have ultimately appointed an expert.

**{¶42}** Initially, we note that Civ.R. 75(F) expressly exempts divorce proceedings from the provisions in Civ.R. 55 that permit default judgments to be granted. *West v. West*, 2022-Ohio-4561, ¶ 9 (3d Dist.). Thus, even if an answer has not been filed in a divorce proceeding, the defendant is still not prevented "from contesting * * * issues in the divorce" or "presenting evidence" at the final hearing. *McKenzie, supra*, at ¶ 5, quoting *Rue, supra,* at ¶ 63, 64. Further, in uncontested divorces, trial courts still have "an independent judicial obligation to divide the marital and separate property equitably between the parties * * *." *Smith v. Smith*, 2024-Ohio-45, ¶ 24 (10th Dist.). In this process,

> [a] trial court must generally assign and consider the values of marital assets in order to equitably divide those assets. * * * A court cannot satisfy its duty without probative evidence of the value of marital assets. * * *
>
> Nevertheless, a party's failure to put on any evidence of value does not permit the court to assign an unknown as the value of a marital asset.

(Citations omitted.) *Raymond v. Raymond*, 2011-Ohio-6173, *7 (10th Dist). In some cases, the trial court can "perform its statutory charge to divide marital assets equally only by appointing a qualified, independent appraiser to provide the court a report on which it c[an] rely." *Kelly v. Kelly*, 2003-Ohio-612, ¶ 39 (2d Dist.).

**{¶43}** Turning to the facts of the case presently before us, a final hearing had been scheduled for November 23, 2021. However, during a pretrial conference on November 12, 2021, the magistrate concluded "that the marital estate had not been adequately assessed or appraised which would have left the magistrate unable to render a decision. Consequently, * * * this Court caused for an expert to be appointed * * *." (Doc. 243). The trial court also noted the need for an expert was evident in the docket because of the recurring issues with obtaining information about these asset values during discovery.

**{¶44}** By the time of the final hearing, William was also unable to produce accurate or complete records that could establish an alternative valuation for AFI. An accountant involved with the business also testified that the company's records were a "shambles." (Tr. 355). The evidence in the record contains no indication that the trial court could have arrived at any reasonably accurate valuation for AFI or the marital estate if an expert had not been appointed. *See Kowalkowski-Tippett v. Tippett*, 2021-Ohio-4220, ¶ 50 (10th Dist.) (a trial court's failure to value marital assets generally constitutes an abuse of discretion).

**{¶45}** William also suggests that Yoho's appointment was procedurally deficient because the trial court acted sua sponte. However, he does not direct us to any legal authority in support of this contention. To the contrary, our review of the case law indicates that trial courts have appointed experts to appraise assets that were not valued or had disputed values. *Wingard v. Wingard*, 2005-Ohio-7066, ¶

-20-

43 (2d Dist.); *Robinson v. Robinson*, 1990 WL 237200, *2-3 (5th Dist. Dec. 18, 1990); *Kette v. Kette*, 1997 WL 760668, *1 (9th Dist. Nov. 12, 1997); *Ruff v. Ruff*, 1995 WL 311721, *1 (11th Dist. Apr. 7, 1995); *Ranck v. Ranck*, 1991 WL 69361, *1 (12th Dist. Apr. 19, 1991).

**{¶46}** Finally, the trial court noted that the docket contained no indication that William objected after the magistrate issued an order appointing an expert. (Doc. 355). At the final hearing, William also did not object to Yoho testifying, her qualifications as an expert, or the admission of her report. *See Caldas v. Caldas*, 2005-Ohio-4493, ¶ 51 (2d Dist.). For these reasons, we conclude that William has not demonstrated that the trial court erred in appointing Yoho. The first argument is without merit.

**{¶47}** Second, William argues that AFI's valuation was not current because Yoho's appraisal determined the company's value as of September 30, 2019.

> 'Valuations of the marital property must be determined as to a specific date.' *Landry v. Landry*, 105 Ohio App.3d 289, 293, 663 N.E.2d 1026 (3d Dist. 1995).

> 'Generally, a domestic relations court should use the same set of dates in valuing marital property. However, in certain instances there may be an equitable reason for selecting a different date on which to value different marital assets. In choosing a different valuation date for certain assets, the court must adequately explain its reasons for doing so.' *DeWitt, supra,* at ¶ 19.

*Mousa*, *supra*, at ¶ 23.  We review challenges to a valuation date for an asset under an abuse of discretion standard.  *Novak*, *supra*, at ¶ 18*.  See also Hall v. Bricker*, 2024-Ohio-1339, ¶ 131 (10th Dist.).

{¶48} In this case, Yoho's report concluded that AFI had a value of $4,836,000.00 as of September 30, 2019.  Yoho testified that her report used this valuation date because 2019 was the last year in which AFI had filed a tax return.  She further testified that she was informed by AFI's accountant that its "financial information was not up to date, it was not reconciled, it was not accurate, that [she] * * * could not rely on it, that he could not prepare a tax return at this time."  (Tr. 26).  For this reason, she stated AFI did not have enough financial information "to do an evaluation [that was] more current."  (Tr. 42).

{¶49} Further, Elsner confirmed that AFI had not filed a tax return since September of 2019 and said that accurate records from after this point could not be "easily produce[d]."  (Tr. 315).  The trial court also noted that William did not "offer[] any other date that was possible from the evidence."  (Doc. 335).  *See also Bobie v. Bobie*, 2023-Ohio-3293, ¶ 40 (12th Dist.).  Having examined the record, we find no indication that the trial court abused its discretion in using this valuation date.  The second argument is without merit.

{¶50} Third, William argues that Yoho's valuation of AFI relied on incomplete information.  However, Elsner testified that, to obtain complete financial records for AFI, the accountants would essentially "have to start over" and would

have to "reenter every transaction." (Tr. 350, 351). He stated that this process would be "way expensive" and "quite time consuming." (Tr. 351). Elsner also indicated that some of the company's information was "no longer accessible" and that the available records were not aligning with AFI's general ledger. (Tr. 356). William's statements confirmed many of these issues by detailing the problems that several bookkeepers had caused in this timeframe.

{¶51} William further argues that Yoho should have incorporated a draft of AFI's 2020 tax returns in her analysis. However, Elsner's testimony does not suggest that this draft was finalized or ready to file. Yoho testified that she asked for additional information that detailed the company's finances beyond 2019 but was informed by AFI's accountant that she could not "rely on the financial information that he could produce from the company because it wasn't reconciled and it wasn't correct." (Tr. 27). She stated that she used the most recent information that Elsner had represented as reliable.

{¶52} William also asserts that Yoho's valuation was deficient because she did not conduct a site visit. However, he has not raised an argument that would suggest that a site visit was a necessary component of determining AFI's value. At the final hearing, Yoho presented a detailed report that described the financial information, methodology, and assumptions that went into determining the fair market value of AFI. She then testified extensively at trial about the process that was used to determine the value of the company. Given the testimony about the

reliability of AFI's financial records after 2019, we conclude that this argument fails to establish that the valuation assigned to AFI is against the manifest weight of the evidence. The third argument is without merit.

{¶53} Fourth, William argues that the valuation of AFI did not account for all of the company's liabilities. However, he has not identified any evidence in the record that could establish that AFI had liabilities that the trial court or Yoho disregarded in determining the value of the company. At the final hearing, he admitted that he did not have any documents that could establish AFI had these liabilities. The appellant has the "burden to affirmatively demonstrate to the appellate court that error has occurred in the action of the trial court." *Isbell*, *supra*, at *2. In the absence of evidence that AFI had these alleged liabilities, William has failed to establish that the trial court erred. The fourth argument is without merit.

{¶54} Fifth, William argues that the Yoho did not provide any testimony to support the valuation of the two real estate holdings of J&B Land. However, Yoho indicated that her firm relied on figures produced by the Consolidated Appraisal Services Company ("CASC"). Yoho submitted a detailed report from CASC that included the methodology and calculations that were used in valuing these assets. Yoho also submitted copies of the county auditor's appraisals of these properties. Both sources valued these two properties at $16,200.00 and $298,420.00. Further, in a table that detailed his assets, William represented the value of these two real estate holdings as being $16,200.00 and $298,420.00. We conclude that these

valuations are supported by some competent, credible evidence. The fifth argument is without merit.

**{¶55}** Sixth, William argues that the trial court erred in classifying 493 Realty Services as marital property. However, the record indicates that this entity was formed in 2012. Further, all three properties held by this company were purchased in 2012. Since these real estate holdings were acquired during the marriage, these assets are presumed to be marital. Additionally, William did not present any information to establish that these assets were separate property under R.C. 3105.171(A)(6) or traceable to separate property. For this reason, we conclude that the trial court's determination is supported by some competent, credible evidence. The sixth argument is without merit.

**{¶56}** Seventh, William argues that the expert's valuation of 493 Realty Services's three real estate holdings was not properly supported by any evidence. Yoho testified that the total value of the property owned by 493 Realty Services was $215,000.00. These valuations were provided to Yoho by CASC. A copy of CASC's report for these properties was submitted to the trial court. This report contained detailed descriptions of CASC's methodology and calculations. Based on these valuations, the trial court assigned a total value of $215,000.00 to the three properties owned by 493 Realty Services.

**{¶57}** On appeal, William points to the fact that Yoho testified that she never received a balance sheet for 493 Realty Services. For this reason, the value of this

entity in her report was the equivalent of the real estate it owned. But William argues that the absence of a balance sheet makes her valuation of this company incomplete. However, the trial court gave William the opportunity to submit any additional information that might affect the valuation of the companies in which he had an interest. He has not identified any records that he submitted that would have affected these valuations in any way. We conclude that the valuation assigned to 493 Realty Services was supported by some competent, credible evidence. The seventh argument is without merit. Since all seven arguments raised herein were meritless, the fifth assignment of error is overruled.

*Conclusion*

**{¶58}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Domestic Relations Division of the Shelby County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WALDICK and MILLER, J.J., concur.**

**/hls**