[Cite as *Starr v. Starr*, 2025-Ohio-5788.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

HEATH STARR,

    PLAINTIFF-APPELLEE,

v.

STACY STARR,

    DEFENDANT-APPELLANT.

CASE NO. 15-25-05

OPINION AND
JUDGMENT ENTRY

Appeal from Van Wert County Common Pleas Court
Trial Court No. DR-20-11-120

**Judgment Affirmed**

**Date of Decision: December 29, 2025**

APPEARANCES:

    *Martin Mohler* **for Appellant**

    *Andrea M. Bayer* **for Appellee**

**WALDICK, P.J.**

{¶1} Defendant-appellant, Stacy Starr ("Stacy"), brings this appeal from the May 21, 2025 judgment of the Van Wert County Common Pleas Court denying her motion to hold plaintiff-appellee, Heath Starr ("Heath"), in contempt. On appeal, Stacy argues that the trial court's decision denying her contempt motion was an abuse of discretion and that it was against the weight of the evidence. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} This matter was initiated when Stacy filled a motion alleging Heath was in contempt for failing to comply with the parties' Final Divorce Decree. The alleged contempt centers on distribution of funds from Heath's 401(k). As there are discrepancies between the parties regarding the 401(k), loans taken from the 401(k), and knowledge of the loans taken from the 401(k), we will trace all the information related to Heath's 401(k) that is present in the record.

{¶3} Heath and Stacy were married in November of 2007. In November of 2020, Heath filed for divorce.

{¶4} In Heath's financial disclosure affidavit, he indicated he had a 401(k) with a value of $37,000. Stacy's financial disclosure affidavit stated that Heath had a 401(k) with a value of $21,400.

**{¶5}** In January of 2021, Heath filed a request for temporary orders related to, *inter alia*, child support. Heath attached a pay stub from December of 2020, showing his earnings and deductions. Heath showed contributions to his 401(k) of $1,473.90 in 2020. The pay stub also showed payment deductions for "401(k) loans" in the amount of $60.18, and $64.81 for the December 2020 pay period. In addition, the pay stub showed that during the year of 2020, Heath had paid $902.70 on one 401(k) loan, and $259.24 on another 401(k) loan.

**{¶6}** On February 18, 2021, Stacy filed a "Motion to Show Cause" alleging, as relevant to this appeal, that Heath was "secreting away marital assets." (Doc. No. 36). She attached an affidavit claiming that "on November 9, 2020, Heath advised [Stacy] that he withdrew $20,000.00 from his 401[k] account. [Stacy] believes that the Plaintiff withdrew this marital asset [401(k) funds] to hide them from [Stacy]." (*Id.*)

**{¶7}** A "Show Cause" hearing was scheduled, then rescheduled to coincide with the final divorce hearing. Prior to the final hearing, Heath filed a witness and exhibit list. The exhibit list included: "Print out [sic] Heath Starr Loans from 401(k)." (Doc. No. 42). A few days later an amended exhibit list was filed, still listing the "Print out [sic] Heath Starr Loans from 401(k)" as an intended exhibit. The exhibits were, unfortunately, not filed in the record.

**{¶8}** The parties ultimately never proceeded to a final hearing on either the divorce action or the show cause motion. Rather, on August 11, 2021, the parties

entered into a "Separation Agreement," which was incorporated into the Final Divorce Decree. The Separation Agreement divided the parties' property, including retirement benefits. The Separation Agreement read, in pertinent part:

> 5.02   HUSBAND has a 401k account in his name through his employment with Mirka, USA. Wife is to receive $43,000.00 from that account. WIFE shall be entitled to any gains and losses in the market until such time as the funds are removed from the accounts and divided. The QDRO shall comply with the requirements of the Retirement Equity Act of 1984 to establish a qualified domestic relations order, and both parties agree they will make any modifications necessary to qualify the order.

(Doc. No. 59). Pursuant to the agreement, a QDRO was to be filed within 90 days after the "final hearing."

{¶9} A QDRO was prepared within 90 days of the Final Divorce Decree; however, it was rejected by the Administrator because the account did not have $43,000 in it. A revised QDRO was then prepared for the amount purportedly in the account--$35,375.63.[1]

{¶10} The revised QDRO was filed with the trial court on July 25, 2022. (Doc. No. 80). The QDRO contained a provision that explicitly stated, "If the account balance includes a loan, the Participant's accrued benefit should exclude the loan balance when computing the Assigned Benefit of the QDRO." The QDRO

---

[1] We say "purportedly" because the amount actually in the 401(k) is only stated in a letter filed as an exhibit by Heath's attorney. No documentation was produced regarding the amount in the account at the time of the Final Divorce Decree or as of the issuance of the QDRO. Similarly, no documentation was produced to show any gains or losses in the account between the Final Divorce Decree and when the QDRO was finalized.

was signed by the parties and the trial court. (*Id.*) Funds were distributed to Stacy from the 401(k). Stacy would later claim that she only received "$21,000," but she did not provide any documentation showing what was distributed to her, how it was taxed, how fees were applied, or how any potential losses had impacted the account.

{¶11} Nearly two years after the QDRO was filed, on May 30, 2024, Stacy filed a "Motion to Show Cause, Lump-Sum Judgment and Other Relief." Stacy argued that Heath had failed to pay his spousal support and his child support pursuant to the Separation Agreement.

{¶12} On July 29, 2024, Stacy filed an "Amended Motion to Show Cause, Lump-Sum Judgment and Other Relief." In the amended motion, Stacy contended that she did not receive $43,000 from Heath's 401(k). She claimed she received substantially less "due to the dilatory action of [Heath] in agreeing to the QDRO needed to separate the funds from his 401(k)." (Language sic).

{¶13} On September 13, 2024, a hearing was held before a magistrate on Stacy's motion. The parties reached a partial agreement wherein Heath admitted to being in contempt of court regarding the payment of spousal support and the children's expenses in the amount of $9,240.46. The remaining contempt issue regarding the 401(k) was ordered to be briefed "with affidavits and supporting documents."

{¶14} Stacy filed a brief in support of her motion to show cause claiming, *inter alia*, that "[t]here was a substantial delay in the filing of the 'QDRO'" and that she only received $21,000. She filed an affidavit stating as much.

{¶15} Heath filed a brief with supporting exhibits indicating that when the parties entered into the Separation Agreement, Heath had provided a screenshot of his retirement plan to his attorney showing that he had $43,401.93 vested in the plan. A QDRO was prepared in October of 2021, within the 90-day window. However, the QDRO was rejected because there was not $43,000 in the account. The "Administrator" provided a statement showing there was only $35,375.63 in the account.

{¶16} A letter from Heath's attorney was attached as an exhibit to his brief stating that, "Both parties were aware that there were loans taken from the [401(k)], but the understanding was that the $43,401.93 was the amount in the plan after the loan balance. That belief was incorrect." (Doc. No. 124, Ex. D). The letter from Heath's attorney claimed Stacy told Heath that she wanted the money that was actually in the retirement account, so a revised QDRO was sent for preapproval. The revised QDRO was preapproved by the "Administrator" on March 17, 2022. Due, in part, to Stacy retaining a new attorney, the revised QDRO was not signed by the parties until July of 2022.

{¶17} In a reply brief in support of her contempt motion, Stacy argued, for the first time, that she was not aware of any loans taken from the 401(k) and that

she did not know if the loans were taken out before or after the Separation Agreement. She claimed that the money from the 401(k) was provided to her to offset equity in the marital residence. She claimed she was entitled to the full $43,000 specifically stated in the Separation Agreement.

{¶18} On January 29, 2025, the magistrate filed a decision denying Stacy's motion for contempt. The magistrate noted that Stacy's Amended Motion for Contempt alleged that Heath was in contempt for not filing the QDRO timely. The magistrate determined that the record did not support a finding of contempt on this issue, given that the first QDRO was initially filed for approval within the 90-day window.

{¶19} The magistrate continued by noting that "it appears that the loan existed at the time the parties entered into the Separation Agreement and the Agreed Judgment Entry. The actual amount in the account at the time appears to be a mistake of fact."[2] (Doc. No. 127). Further, the magistrate determined that Stacy had not provided any documentation related to the money she did receive from the 401(k) distribution. She did not show how much was removed by fees, expenses, taxes, or market fluctuation due to the passage of time.

{¶20} Stacy filed objections to the magistrate's decision. On May 21, 2025, the trial court filed a final judgment entry overruling Stacy's objections. The trial

---

[2] We cannot clearly say that the amount in the account was a mistake of fact without more documentation in the record.

court determined that Stacy had the burden to establish contempt by clear and convincing evidence, and she failed to meet that burden. "[T]he Defendant has not proven by clear [and] convincing evidence the Plaintiff's unreasonable delay or that the amount received was inappropriate. Again the value of the marital estate as affected by the actual value of the retirement account as changed by market or account conditions has not been demonstrated." (Doc. No. 135). Stacy's contempt motion was thus denied.

{¶21} It is from this judgment that Stacy appeals, asserting the following assignments of error for our review.

### First Assignment of Error

**The trial court erred and abused its discretion in refusing to find civil contempt where the court's order regarding distribution of assets was violated.**

### Second Assignment of Error

**The trial court's findings of fact are contrary to the manifest weight of the evidence.**

{¶22} As both of Stacy's assignments of error concern the trial court's determinations related to the evidence, we will address them together.

*First and Second Assignments of Error*

{¶23} In her first assignment of error, Stacy argues that the trial court abused its discretion by finding that she had not established contempt in this matter by clear

and convincing evidence. In her second assignment of error, Stacy argues that the trial court's factual findings were against the manifest weight of the evidence.

## Standard of Review

{¶24} We review a trial court's decision on a motion for contempt under an abuse of discretion standard. *State ex rel. Meyers Lake v. Michel*, 2025-Ohio-384, ¶ 20. An abuse of discretion is present when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶25} With regard to Stacy's claims that some of the trial court's findings were not supported by the weight of the evidence, this Court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new hearing ordered. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

## Analysis

{¶26} In a civil contempt proceeding, the movant bears the initial burden of demonstrating by clear and convincing evidence that the other party has violated an order of the court. *Hopson v. Hopson*, 2005-Ohio-6468, ¶ 19 (10th Dist.). If the

movant meets her burden, the burden shifts to the other party to either rebut the showing of contempt or demonstrate an affirmative defense by a preponderance of the evidence. *Id*. citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 140 (1984).

{¶27} In this case, Stacy filed her amended motion for contempt first mentioning not receiving the $43,000 from Heath's 401(k) nearly two years after the QDRO had been signed. In her motion, Stacy argued that she did not receive $43,000 "due to the dilatory action of [Heath]. . . . As such, he is, and continues to be, in contempt of the Court." (Doc. No. 115).

{¶28} Stacy focused her argument in the contempt motion on Heath's purported "dilatory" action because the QDRO was not ultimately filed within 90 days of the Final Divorce Decree. However, this was explained through briefing to the court. A timely QDRO was prepared, but was rejected because the account had insufficient funds. A revised QDRO was then prepared and presented to Stacy, but it took her some time to get it signed because she retained a new attorney.

{¶29} The trial court determined that Stacy had not established by clear and convincing evidence that Heath had violated the order to timely file the QDRO by some dilatory action, and we can find nothing arbitrary, unreasonable, or unconscionable with this decision. However, this does not end the discussion.

{¶30} In her "Reply Brief in Support of Motion to Show Cause," Stacy argued, for seemingly the first time in the contempt proceeding, that the 401(k) account did not have $43,000 at the time the QDRO was filed because Heath had

taken loans out from the 401(k). She argued that she had no knowledge of any loans taken from the 401(k) and no knowledge of when any loans were taken from the account.

{¶31} While there are undoubtedly discrepancies with the amount of money in the 401(k) during these proceedings, Stacy's arguments are unavailing for multiple reasons. First, she had filed a show-cause motion related to 401(k) loans early in the divorce proceeding, establishing affirmative knowledge of loans from the 401(k). Second, Heath's pay stubs indicated that he was paying back 401(k) loans during the marriage in 2020. Third, the 401(k) loans were listed as an exhibit for the final hearing, indicating they had almost certainly been exchanged in discovery.

{¶32} However, perhaps the most compelling evidence against Stacy's contempt claim is the QDRO language that was signed by Stacy in July of 2022. The QDRO stated:

> 4. The "Assigned Benefit" or the portion of the Participant's Plan benefits payable to the Alternate Payee under this QDRO is:
>
> The applicable QDRO distribution which shall be determined based on the complete dollar amount, in full, attributable to the Participant as of August 11, 2021 (less any loan balance owed by the Participant) plus any gain/loss allocation applicable from that date to the date determined under the provisions of the Plan and is contingent upon the frequency of Plan valuations. It is understood that defined contribution plans are typically valued on a daily basis but that some accounts are in a pooled trust arrangement that might be valued only once per year (with gain/loss adjustments being made only at the plan year-end). In the case of an account that is valued less often than daily,

the valuation date closest to the date named in the QDRO will be used to determine the account balance. The account source of the applicable QDRO payment shall be pro-rated from all available account sources; however, no payments shall be disbursed from any designated Roth account until all other sources are depleted.

***If the account balance includes a loan, the Participant's accrued benefit should exclude the loan balance when computing the Assigned Benefit of the QDRO.***

(Emphasis added.) (Doc. No. 80).

{¶33} The QDRO, which was signed by the parties and their attorneys in July of 2022, specifically indicated that any balance provided to Stacy *would exclude loan balances*. Stacy and her attorney both signed this document. Nevertheless, nearly two years after signing the QDRO, Stacy argued that she was unaware of any loans or that loans had reduced the balance in the account.

{¶34} The parties' Separation Agreement indicated Stacy was to receive $43,000 from Heath's 401(k). When the QDRO was filed, apparently only $35,375.63 was in the 401(k). Loans had certainly been taken out of the account *prior* to the Separation Agreement, and Stacy was, or should have been, aware of those loans given the financial information in the record and her own filings.

{¶35} What our record does not have is any indication of when the loans were actually taken out, how much the loans were for, and what the money was used for. Moreover, we do not have adequate documentation in the record to show that Heath acted in some manner to reduce the amount that would be received by Stacy

*after the Final Divorce Decree*. Simply put, Stacy has not established by clear and convincing evidence how Heath violated the Final Divorce Decree.

**{¶36}** Notably, even if we did find some issue with Heath's actions post-decree, Stacy explicitly agreed to accept the amount in the account minus any loans when she signed the QDRO in July of 2022. The Separation Agreement indicated that "No changes to the terms of this Agreement shall be valid unless in writing and knowingly and voluntarily signed by both parties and incorporated into a Court Order." The QDRO was in writing and signed by the parties and their attorneys.

**{¶37}** The loans may have been paid back in-full at some point during this action, but there is no documentation showing the amount of the loan. We also do not have any documentation showing what amount Stacy *actually received* from the 401(k) before taxes and fees, notwithstanding market fluctuations, all of which were contemplated in the Separation Agreement and the later-filed QDRO. Simply put Stacy presented no evidence to the trial court and accordingly there is no evidence in the record as to how the amount of QDRO distribution to her was calculated.

**{¶38}** Therefore, based on the record before us, we do not find that the trial court abused its discretion by determining that Stacy did not establish contempt by clear and convincing evidence. Similarly, we do not find that the trial court's factual findings are against the weight of the evidence. Therefore, Stacy's first and second assignments of error are overruled.

*Conclusion*

**{¶39}** Having found no error prejudicial to Stacy in the particulars assigned and argued, her assignments of error are overruled and the judgment of the Van Wert County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

Case No. 15-25-05

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

 

Juergen A. Waldick, Judge

 

William R. Zimmerman, Judge

 

Mark C. Miller, Judge

DATED:
/jlm