[Cite as *Young v. Young*, 2026-Ohio-883.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

SEAN YOUNG,

    PLAINTIFF-APPELLANT/
    CROSS-APPELLEE,

    v.

TONI YOUNG,

    DEFENDANT-APPELLEE/
    CROSS-APPELLANT.

CASE NO. 5-24-52

OPINION AND
JUDGMENT ENTRY

---

**Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2022 DR 505**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:  March 16, 2026**

---

**APPEARANCES:**

    *Scott H. Smith* **for Appellant**

    *Howard A. Elliott* **for Appellee**

**WILLAMOWSKI, J.,**

{¶1} Plaintiff-appellant and cross-appellee Sean D. Young ("Sean") appeals the judgment of the Domestic Relations Division of the Hancock County Court of Common Pleas, arguing that the trial court erred by (1) improperly classifying several assets as marital; (2) finding that he had not overpaid in child support since October of 2022; (3) selecting a valuation for the marital residence that relied on excluded evidence; (4) ordering him to pay spousal support; (5) failing to appoint a receiver to administer the sale of the marital residence; and (6) directing him to pay for several costs associated with the marital residence.

{¶2} Defendant-appellee and cross-appellant Toni R. Young ("Toni") appeals the judgment of the Domestic Relations Division of the Hancock County Court of Common Pleas, arguing that the trial court erred by (1) excluding her appraiser's valuation of the marital residence; (2) ordering her to pay a $66,002.22 equalization payment; (3) setting her award of spousal support at $100.00 a month; and (4) ordering her to pay the first $420.00 of court costs. For the reasons set forth below, the judgment of the trial court is affirmed in part and reversed in part.

*Facts and Procedural History*

{¶3} Sean and Toni were married in 1990. On June 1, 2017, the parties filed a complaint for separation with the Domestic Relations Division of the Hardin County Court of Common Pleas ("Hardin County Domestic Relations Court") that

became the basis of Case No. 2017-3076-DRK. A separation agreement that had been signed by both parties was filed alongside this complaint. On July 18, 2017, the Hardin County Domestic Relations Court issued an order of legal separation that incorporated this separation agreement. However, the separation agreement did not divide and allocate several assets, including the marital residence and three retirement accounts that existed at this time.

{¶4} Toni and Sean attempted to reconcile on several occasions over the next five years but ceased any further attempts at reunification in October of 2022. On December 19, 2022, Sean filed a complaint for divorce with the Domestic Relations Division of the Hancock County Court of Common Pleas ("trial court"). At this time, only one of Sean and Toni's five children, E., had not yet reached the age of majority. After the parties sought to have Case No. 2017-3076-DRK transferred from Hardin County to Hancock County, the trial court in Hancock County accepted jurisdiction over this case on August 30, 2023, and the Hardin County case was transferred to and consolidated with the Hancock County case.

{¶5} On September 25, 2023, Sean filed a motion to show cause, alleging that Toni had violated the terms of the order of legal separation by preventing him from having visitation with his two youngest children, A. and E. In examining Sean's show cause motion, the magistrate noted that the trial court had appointed a guardian ad litem ("GAL") on October 30, 2023 at the request of both parties. The

trial court ultimately denied the show cause motion to permit further investigation into the parenting issues raised by Sean.

{¶6} After Sean withdrew his request for reasonable parenting time, the parties each sought to have the GAL discharged and relieved of further investigative responsibilities in this case. The trial court later discharged the GAL and approved the GAL fees of $420.00. These fees were paid out of a $600.00 deposit that Sean had previously made with the trial court.

{¶7} On November 14, 2023, Toni filed a motion to show cause, alleging that Sean had violated the order of legal separation by failing to pay to have the propane tank at the marital residence refilled. This motion remained pending at the time of the final hearing. Sean later testified that he did not have the funds in the relevant timeframe to cover this cost. Toni presented evidence that she paid $1,061.41 to have the propane tank refilled.

{¶8} On March 13, 2024, Sean filed a motion to emancipate his youngest son, A., from the child support obligation that was established in the order of legal separation. Sean pointed out that A. had turned eighteen over a year earlier in October of 2022. He then requested that the payments he had made since A's eighteenth birthday in 2022 be credited towards his future child support obligation for his remaining minor child, E. In response, the magistrate issued an order that temporarily suspended the disbursement of Sean's child support obligation.

{¶9} On March 13, 2024, Sean also filed a motion to compel Toni to grant his appraiser, Jon Fleegle ("Fleegle"), access to the marital residence so that he could complete a full assessment of the property. This motion stated that Fleegle was available to conduct a walk-through visit on March 15, March 19, or March 21, 2024. On March 19, 2024, the magistrate issued an order that directed Toni to grant Fleegle access to the marital residence on one of the dates listed in Sean's motion.

{¶10} However, Fleegle was not given an opportunity to tour the inside of the house before he ultimately conducted a "drive-by" examination of the property on March 27, 2024. (Doc. 132). Based on several sales comparisons, he concluded the marital residence was worth $331,000.00. After receiving a copy of Fleegle's evaluation, Toni had an appraiser, Ken Stefko ("Stefko"), go through marital residence on April 13, 2024 to conduct another valuation. Stefko took several pictures of the interior of the marital residence for his report and concluded that the property was worth $250,000.00.

{¶11} On April 15, 2024, Sean filed a motion in limine that sought to have Stefko's appraisal excluded from evidence. In support of this motion, he pointed out that Fleegle was never granted access to the marital residence, even though Sean and his attorney had engaged in repeated efforts to schedule a walk-through visit since January. This motion also indicated that Sean had received Stefko's report three days before the date of the final hearing. No ruling on this motion was made prior to the final hearing.

{¶12} On April 18, 2024, the final hearing was held before a magistrate. Fleegle testified that the marital residence was worth $331,000.00. However, he revised his valuation to $301,000.00 after he was presented with the pictures of the home's interior that Stefko had taken. Stefko then identified his report and testified that the marital residence was worth $250,000.00. Fleegle and Toni each testified about the efforts that were made to schedule a walk-through visit for the appraisal.

{¶13} On July 29, 2024, the magistrate issued a decision. Pursuant to Sean's motion, the magistrate concluded that most of Stefko's report and testimony should be excluded but that Stefko's pictures of the home's interior should be admitted. The marital residence was then assigned a value of $301,000.00 based on Fleegle's revised appraisal.

{¶14} Toni was awarded the marital residence but was given a timeline for the sale of the house if she was unable to refinance the debts associated with this property. While Sean had made contributions to several of his retirement accounts after the order of legal separation had been issued, the value of these accounts was effectively divided between the parties. To balance the division of assets, Toni was directed to make an equalization payment of $66,002.22 to Sean.

{¶15} In examining Sean's motion to have A. emancipated from child support, the magistrate concluded that, based on the evidence in the record, Sean's child support obligation for A. under the order of legal separation should be terminated as of his nineteenth birthday in October of 2023. The magistrate then

recommended that Sean's child support obligation for E. should be $586.91 a month, commencing on the date of the final hearing on April 18, 2024, and that his spousal support obligation should be $100.00 a month for two years.

{¶16} As to Toni's show cause motion, the magistrate determined that Sean should reimburse Toni in the amount of $1,061.42 for the costs of refilling the propane tank. However, the magistrate found that Sean should not be held in contempt because he was financially unable to pay this bill at the time it had come due. Since Sean's $600.00 deposit was used to pay the entire GAL bill of $420.00, the magistrate's decision concluded by finding that Toni should pay the first $420.00 of court costs.

{¶17} Sean and Toni each filed objections to the magistrate's decision. Aside from correcting a scrivener's error, the trial court overruled the objections of the parties and adopted the magistrate's decision. On November 27, 2024, the trial court issued the divorce decree.

{¶18} Sean filed his notice of appeal on December 13, 2024. On appeal, he raises the following six assignments of error:

**Sean's First Assignment of Error**

**The trial court failed to award Husband, as his separate property, his real or personal property interests which were acquired after the decree of legal separation issued under section 3105.17 of the Revised Code.**

**Sean's Second Assignment of Error**

**A[.'s] date of emancipation for child support purposes should have been as of his eighteenth birthday because Wife failed to present evidence that A[.] was continuously attending a recognized and accredited high school on a full-time basis after his eighteenth birthday.**

**Sean's Third Assignment of Error**

**The trial court abused its discretion by accepting a modified value of the marital residence based solely on evidence which had been precluded by the trial court.**

**Sean's Fourth Assignment of Error**

**The trial court abused its discretion by finding that an award of spousal support in this matter was reasonable and appropriate.**

**Sean's Fifth Assignment of Error**

**The trial court abused its discretion by ordering that Wife be in control of the manner and time of sale of the marital residence.**

**Sean's Sixth Assignment of Error**

**The trial court abused its discretion by ordering that Husband pay to Wife the cost of refilling the propane tank and paying the balance owed to Water Solutions as of December 19, 2022.**

Toni filed her notice of appeal on December 27, 2024. On appeal, she raises the following four assignments of error:

**Toni's First Assignment of Error**

**The trial court abused its discretion in granting Appellant/Cross-Appellee's motion for the trial court to exclude the testimony of the Appellee/Cross-Appellant's expert concerning the valuation of the marital home.**

Case No. 5-24-52

**Toni's Second Assignment of Error**

**The trial court abused its discretion and erred by ordering a $66,002.22 equalization payment by Appellee/Cross-Appellant's [sic] to Appellant/Cross-Appellee in connection with the division of marital assets.**

**Toni's Third Assignment of Error**

**The trial court abused its discretion and erred by entering into an order of spousal support for the Appellee/Cross-Appellant as to both the amount and duration of the spousal support order.**

**Toni's Fourth Assignment of Error**

**The trial court abused its discretion and erred in ordering that the Appellee/Cross-Appellant be responsible for the payment of the Guardian ad Litem (GAL) fees herein.**

For the sake of clarity, we will later consider Sean's third assignment of error together with Toni's first assignment of error and Sean's fourth assignment of error together with Toni's third assignment of error.

*Sean's First Assignment of Error*

{¶19} Sean asserts that he acquired interests in several of the retirement accounts at issue and the marital residence after the order of legal separation was issued. He argues that the trial court erred in classifying these interests as marital property.

Legal Standard

{¶20} In divorce proceedings, assets owned by the parties are classified as either marital or separate property. R.C. 3105.171(A)(4). In general, separate

-9-

property is awarded to the party that owns the asset while marital property is to be divided equitably—if not equally—between the parties. *Worden v. Worden*, 2017-Ohio-8019, ¶ 14 (3d Dist.), citing R.C. 3105.171(C)(1). "Marital property" includes

> [a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage[.]

R.C. 3105.171(A)(3)(a)(i). "Separate property" includes "[a]ny real or personal property or interest in real or personal property acquired by one spouse *after a decree of legal separation* issued under . . . [R.C.] 3105.17 . . . ." (Emphasis added.) R.C. 3105.171(A)(6)(a)(iv).

## Standard of Review

{¶21} A "trial court's classification of property as marital or separate is a factual determination" and is reviewed under a manifest weight standard. *Worden* at ¶ 17. Thus, "the classification of an asset will not be reversed if the record contains some competent, credible evidence that supports the trial court's determination." *Freytag v. Freytag*, 2024-Ohio-2403, ¶ 23 (3d Dist.).

## Legal Analysis

{¶22} Sean raises two main arguments that assert the trial court did not properly classify various interests as his separate property. First, he points to the trial court's handling of the five retirement accounts at issue in this case. Sean's testimony indicates that he made contributions to the Ohio Police and Fire Pension

Fund ("P&F Pension"); the Ohio Public Employees Retirement System ("OPERS"); and an Ohio Deferred Compensation plan ("ODC") before he and Toni entered into the separation agreement. For some reason, the separation agreement did not divide these three retirement accounts between the parties.

{¶23} Nonetheless, the Hardin County Domestic Relations Court incorporated this separation agreement into an order of legal separation that was issued on July 18, 2017. Sean subsequently made contributions to the OPERS account. He then opened a retirement account with the Teachers Insurance and Annuity Association ("TIAA") in 2018 and a King Development, Ltd., Retirement Savings Plan ("King Plan"). Thus, the record indicates that, after the order of legal separation was issued, Sean opened two retirement accounts (TIAA and King Plan) and made contributions to at least three of the five retirement accounts (the TIAA, King Plan, and OPERS accounts) at issue in this case.

{¶24} In this case, the trial court used the date on which the divorce complaint was filed to determine the extent to which the funds in these accounts were marital or separate. Thus, any contributions that Sean made to these retirement accounts before December 19, 2022 were classified as marital property. As a result, the divorce decree awarded Toni one-half of the retirement accounts with the P&F Pension; OPERS; and the King Plan. Sean then received the TIAA account, the ODC account, and an equalization payment of $66,002.22 to offset the award of the marital residence to Toni.

{¶25} On appeal, Sean argues that the trial court's classification of the funds in these retirement accounts should not have been based upon the date on which the complaint for divorce was filed. To decide this argument, we turn to the statutory definitions of marital and separate property. R.C. 3105.171(A)(6)(a)(iv) states that "separate property" includes "any real or personal property acquired by one spouse *after a decree of legal separation* issued under . . . [R.C.] 3105.17 . . . ."

{¶26} Based on this language, we conclude that the interests in these retirement accounts that Sean acquired through the contributions that he made after the order of legal separation was issued on July 18, 2017 were his separate property. Thus, the trial court erred in classifying the contributions that Sean made between the issuance of the order of legal separation and the filing of the divorce decree as marital property. For this reason, we reverse the portions of the divorce decree that relate to the classification and division of the retirement accounts between the parties.

{¶27} On remand, the trial court must determine the amount of any contributions that Sean made to each retirement account after the order of legal separation was issued by the Hardin County Domestic Relations Court. The portions of the retirement accounts that are attributable to the contributions that Sean made after July 18, 2017 are to be classified as his separate property.[1] The portions

---

[1] This process is complicated by the fact that the order of legal separation did not divide these accounts in 2017. Thus, several of the retirement accounts currently contain marital contributions, the appreciation on marital contributions, Sean's separate contributions, and the appreciation on Sean's separation contributions.

of these retirement accounts that are attributable to the contributions that were made during the marriage and prior to July 18, 2017 are to be classified as marital property. Accordingly, Sean's first argument herein is well-taken.

{¶28} Second, Sean argues that the trial court erred in ordering an arrangement that effectively divided the value of the marital residence equally between the parties. He points out that he made all of the payments on the debts associated with the marital residence from the time the order of legal separation was issued through the date of the final hearing. For this reason, Sean asserts that the trial court should have awarded him a greater share of the value of the marital residence to reflect the payments he made after the order of legal separation.

{¶29} However, under the separation agreement, the marital residence remained a jointly owned property. Sean then assumed responsibility for paying the mortgage and the home equity loan. Because of the allocation of these debts to him, Sean was not "paying Wife full spousal support" under the separation agreement. (Doc. 140). Thus, Sean agreed to pay the debts associated with the marital residence in lieu of having a higher level of spousal support.

{¶30} Under this arrangement, Sean forwent a portion of his income and Toni forwent a higher level of spousal support to facilitate the payment of these obligations. We find this arrangement to be substantively equivalent to one in which Sean agreed to pay a higher level of spousal support and the parties divided the responsibility to make payments on these debts.

{¶31} Further, we also note that Sean does not identify any evidence in his brief that suggests he paid more towards these debts than what he was obligated to pay under the order of legal separation. Having examined the evidence in the record, we conclude that Sean has failed to demonstrate that the trial court erred in declining to classify a portion of the equity in the marital residence as his separate property. Accordingly, the second argument herein is not well-taken.

{¶32} In summary, the trial court erred in the process of classifying the five retirement accounts at issue in this case. However, the trial court's decision to classify the jointly owned residence as marital property was supported by competent, credible evidence. To the extent that the trial court improperly classified and divided the funds in the five retirement accounts between the parties, Sean's first assignment of error is sustained.

*Sean's Second Assignment of Error*

{¶33} Sean asserts that the trial court should have concluded that he had overpaid on his child support obligation since A. turned eighteen in October of 2022.

Legal Standard

{¶34} "In Ohio, a parent's obligation to pay child support normally terminates when the child reaches the 'age of majority.'" *Sweet v. Sweet*, 2023-Ohio-548, ¶ 10 (2d Dist.). R.C. 3109.01 defines "age of majority" as including "[a]ll persons of the age of eighteen years or more, who are under no legal disability, are capable of contracting and are of full age for all purposes." However, R.C.

3119.86 identifies several circumstances that could extend a parent's duty of support beyond a child's eighteenth birthday.

> (1) The duty of support to a child imposed pursuant to a court child support order shall continue beyond the child's eighteenth birthday only under the following circumstances:
>
> (a) The child is mentally or physically disabled and is incapable of supporting or maintaining himself or herself.
>
> (b) The child's parents have agreed to continue support beyond the child's eighteenth birthday pursuant to a separation agreement that was incorporated into a decree of divorce or dissolution.
>
> (c) The child continuously attends a recognized and accredited high school on a full-time basis on and after the child's eighteenth birthday.
>
> . . .
>
> (B) A court child support order shall not remain in effect after the child reaches nineteen years of age unless the order provides that the duty of support continues under circumstances described in division (A)(1)(a) or (b) of this section for any period after the child reaches age nineteen. An administrative child support order shall not remain in effect after the child reaches age nineteen.

R.C. 3119.86(A)(1), (B).[2] Further, "Ohio law recognizes that for any number of reasons, overpayment of child support can occur." *Dario v. Colliver*, 2011-Ohio-4342, ¶ 34 (12th Dist.); *Dietrich v. Dietrich*, 2010-Ohio-3608, ¶ 10 (8th Dist.).

> Generally, a domestic relations court loses jurisdiction to modify parental rights and responsibilities, including child support, when a

---

[2] On December 19, 2024, a revision to R.C. 3119.86 was enacted and took effect on March 25, 2025. This revision moved the provision in R.C. 3119.86(B) to R.C. 3119.861 and reordered the subsections in R.C. 3119.86. However, the provisions relevant to this opinion were not substantively altered. Since the divorce decree was issued before the revisions to R.C. 3119.86 were enacted, this opinion sets forth the former version of this code section.

child is emancipated. . . . [However,] the court retains jurisdiction to reduce an overpayment to judgment.

(Citations omitted.) *Sandel v. Choma,* 2017-Ohio-8301, ¶ 13 (9th Dist.). "Alternatively, the overpayment can be ordered liquidated over time by applying it as a credit toward the obligor's current support obligation." *Dietrich* at ¶ 10.

## Standard of Review

{¶35} Appellate courts apply an abuse-of-discretion standard when reviewing a trial court's decisions regarding a party's overpayment of child support. *Dario* at ¶ 34. *See Hubbard v. Hubbard*, 2009-Ohio-2194, ¶ 13 (3d Dist.). An abuse of discretion is present where a determination is arbitrary, unreasonable, or unconscionable. *Pelger v. Pelger*, 2019-Ohio-1280, ¶ 10 (3d Dist.).

## Legal Analysis

{¶36} The order of legal separation that was issued by the Hardin County Domestic Relations Court required Sean to make a biweekly payment of $200.00 in child support for his two youngest children, A. and E. In this case, Sean filed a motion requesting that A. be declared emancipated from the child support order as of his eighteenth birthday in October of 2022. Sean asserted that he had overpaid on his child support obligation between A.'s eighteenth birthday in October of 2022 and the filing of his motion in March of 2024. He then sought an order that would credit this alleged overpayment towards his future child support obligation for his remaining minor child, E.

{¶37} In response, the magistrate issued an order that directed the Child Support Enforcement Agency not to disburse any further payments from Sean until the issue of A.'s emancipation had been decided after the final hearing. However, Sean's motion and his testimony at the final hearing did not indicate when A. had completed his high school education. This information would have established whether Sean's child support obligation should have terminated when A. turned eighteen in October of 2022.

{¶38} In the absence of such evidence, Sean failed to demonstrate that A.'s eighteenth birthday was the point at which he began to overpay on his child support obligation. The magistrate noted that the record did not establish when A. had completed his high school education but did establish when he turned nineteen. Thus, the point at which the magistrate could definitively conclude from the evidence before him that Sean began overpaying on his child support obligation was when A. turned nineteen. R.C. 3119.86(A)(1)(c), (B).

{¶39} Based on the evidence in the record, the magistrate concluded that the level of child support established in the order of legal separation should remain in effect through A.'s nineteenth birthday in October of 2023. Sean's child support obligation for his remaining minor child, E., was then set at the level of $200.00 a month from the time of A.'s nineteenth birthday in October of 2023 through the date

of the final hearing on April 18, 2024.[3] The trial court then adopted the magistrate's decision on this matter.

**{¶40}** In summary, Sean's arguments address the amount that he overpaid in child support under the order of legal separation and *not* the amount of his child support obligation under the divorce decree. However, he did not present evidence that could establish that his child support payments for A. through his nineteenth birthday constituted an overpayment on his obligation. Having examined the record, we conclude that Sean has failed to demonstrate that the trial court abused its discretion in this matter. Accordingly, Sean's second assignment of error is overruled.

*Sean's Third and Toni's First Assignments of Error*

**{¶41}** Toni and Sean challenge different aspects of the trial court's decision to exclude significant portions of Stefko's report and testimony.

Legal Standard

**{¶42}** Civ.R. 37 authorizes a trial court to impose sanctions where a party "fails to obey an order to provide or permit discovery." Civ.R. 37(B)(1). *See Welly v. Welly*, 2015-Ohio-4804, ¶ 43 (3d Dist.). Civ.R. 37(B) contains the following list of sanctions that a trial court may impose in addressing a discovery violation:

---

[3] The magistrate's decision stated the amount of Sean's child support obligation in monthly terms while the order of legal separation had stated this amount in biweekly terms. The order of legal separation required Sean to make a biweekly payment of $200.00 in child support for A. and E. Thus, the monthly payment of $200.00 in child support for E. was essentially half of the child support obligation that Sean previously had under the order of legal separation for A. and E. Commencing on the date of the final hearing, the level of Sean's spousal support for E. was set at $586.91 per month.

(a) Directing that the matters embraced in the order or other designated facts shall be taken as established for purposes of the action as the prevailing party claims;

(b) Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(c) Striking pleadings in whole or in part;

(d) Staying further proceedings until the order is obeyed . . . ;

(e) Dismissing the action or proceeding in whole or in part;

(f) Rendering a default judgment against the disobedient party; or

(g) Treating as contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

Civ.R. 37(B)(1). Pursuant to this rule, "a trial court may exclude expert testimony as a sanction . . . ." *Miller v. Miller*, 2025-Ohio-1923, ¶ 25 (5th Dist.). In deciding the appropriateness of a discovery sanction,

the trial court should weigh the conduct of the party offering [evidence] along with the level of prejudice suffered by the opposing party attributable to the discovery violation, in order to determine the appropriate sanction.

(Brackets sic.) *Black v. Hicks*, 2020-Ohio-3976, ¶ 56 (8th Dist.), quoting *Savage v. Correlated Health Servs.*, 64 Ohio St.3d 42, 55 (1992).

{¶43} This process involves "consider[ing] the posture of the case and what efforts, if any, preceded the noncompliance . . . ." *Gebi v. Worku*, 2017-Ohio-8462, ¶ 9 (10th Dist.), quoting *Russo v. Goodyear Tire & Rubber Co.*, 36 Ohio App.3d 175, 178 (9th Dist. 1987). The trial court must then "impose the least severe

sanction that is consistent with the purpose of the rules of discovery." *Cap. One, N.A. v. Jones*, 2026-Ohio-62, ¶ 31 (3d Dist.), quoting *Black* at ¶ 55.

Standard of Review

{¶44} The decision of what sanction to impose for a discovery violation is committed to the sound discretion of the trial court. *Gebi* at ¶ 9. An abuse of discretion is more than an error of judgment but is present when a decision is arbitrary, unreasonable, or unconscionable. *Heimann v. Heimann*, 2022-Ohio-241, ¶ 85 (3d Dist.).

Legal Analysis

{¶45} In this case, the magistrate issued an order on January 10, 2024 that directed the parties to obtain an appraisal for the marital residence. The order of legal separation gave "exclusive use" of the marital residence to Toni. (Doc. 74). However, the first appraiser Sean found was never able to access the inside of the house while he was available to conduct an evaluation. As a result, Sean found a new appraiser and retained Fleegle.

{¶46} Fleegle testified that he communicated with Toni's attorney to schedule a walk-through visit at the house but that these efforts were unsuccessful. On March 13, 2024, Sean filed a motion to compel, seeking an order that directed Toni to permit an inspection of the premises on one of three identified dates on which Fleegle was available: March 15, March 19, or March 21, 2024.

{¶47} In response, the magistrate issued an order on March 19, 2024 that directed Toni to give Fleegle access to the house for an inspection of the premises. However, Fleegle testified that he was ultimately "not allowed access" into the marital residence. (Tr. 24). On March 27, 2024, Fleegle conducted a curbside evaluation in which he examined the external features of the house. He testified that he was later contacted by Toni's attorney to schedule a walk-through visit, but he declined this offer as the appraisal had already been completed.

{¶48} Toni testified that, after she had learned that Fleegle had valued the house at $331,000.00, she contacted Stefko to schedule an appraisal because she thought Fleegle's valuation was too "high." (Tr. 201). Five days before the final hearing, Toni granted Stefko entry into the house to conduct a walk-through visit and to take pictures of the home's interior. He concluded that the marital residence was worth $250,000.00.

{¶49} Sean filed a motion in limine that requested Stefko's entire report and appraisal be excluded pursuant to Civ.R. 37. He pointed out that Toni never granted Fleegle access to the marital residence so that he could conduct a complete evaluation. He also noted that he only received Stefko's report three days before the final hearing.

{¶50} The magistrate ultimately found that most of Stefko's report and testimony should be excluded from evidence. However, his decision specified that Stefko's pictures of the home's interior and the testimony related to these

photographs should be admitted. Thus, the magistrate's determination on Sean's motion was limited to certain portions of Stefko's report and testimony. The trial court then adopted this decision.

**{¶51}** On appeal, the parties challenge different aspects of this determination. First, Toni argues that the trial court erred in excluding most of Stefko's report and testimony in accordance with the magistrate's decision. At the final hearing, she testified that a walk-through visit was not scheduled with Fleegle because all of the dates in Sean's motion to compel had already passed by the time she received the order from the trial court. She also testified that she did not remember when Sean first attempted to schedule a walk-through for an appraisal.

**{¶52}** However, in evaluating this testimony, the magistrate found that Toni's testimony on this matter was "not credible, and has strong signs of being intentionally deceptive." (Doc. 140). The magistrate concluded that Toni "actively interfered with Plaintiff's appraisal." (Doc. 140). The magistrate pointed out that Toni had been made aware of the need to schedule a walk-through visit; had sole possession of the house; worked part-time outside of the home; and quickly found time to accommodate Stefko.

**{¶53}** The identified portions of Stefko's report and testimony were ultimately excluded because the magistrate found that Toni's "maneuvers were manipulative, self-serving, and impaired trial preparation." (Doc. 140). In reaching this conclusion, the trial court appropriately considered Toni's conduct and the

impact on Sean's ability to prepare his case. Having examined the evidence in the record, we conclude that Toni has failed to establish that the trial court abused its discretion in excluding portions of Stefko's report and testimony.

**{¶54}** Second, Sean asserts that the trial court should not have selected Fleegle's revised valuation of $301,000.00 for the marital residence because he used pictures that were excluded as part of Stefko's report in making this revision. However, the ruling on Sean's motion stated that these pictures were not excluded. Thus, the trial court did not act inconsistently with its ruling by using a valuation from Fleegle that partially relied on Stefko's pictures.

**{¶55}** Further, Fleegle's testimony indicates that his original valuation of $331,000.00 was based on the assumption that the interior of the home was in better condition than what was depicted in Stefko's pictures. After being presented with these pictures, Fleegle testified that the marital residence was worth $301,000.00. Since Stefko's report and testimony had been largely excluded, the trial court selected what was, according to Fleegle's testimony, the most accurate valuation presented at the final hearing.

**{¶56}** We also note that discovery violations should generally be addressed with the "least severe sanction that is consistent with the purpose of the rules of discovery." *Jones*, 2026-Ohio-62, ¶ at 31 (3d Dist.), quoting *Black* at ¶ 55. In its determination, the trial court struck a balance between addressing Toni's discovery violation and the need for assigning an accurate valuation to the marital residence.

Having examined the evidence in the record, we conclude that Sean has failed to establish that the trial court abused its discretion by failing to order a more stringent sanction in this case.

{¶57} In summary, we find no indication that the trial court abused its discretion in excluding portions of Stefko's report and testimony or in admitting the pictures from Stefko's report. Thus, the parties have failed to establish that the trial court erred by largely excluding Stefko's report or by using Fleegle's revised valuation of the marital residence. Accordingly, Sean's third assignment of error and Toni's first assignment of error are overruled.

*Sean's Fourth and Toni's Third Assignments of Error*

{¶58} Both parties challenge aspects of the trial court's decision to order Sean to pay Toni $100.00 a month in spousal support for two years.

Legal Standard

{¶59} R.C. 3105.18 addresses the award of spousal support in divorce proceedings and provides the following:

> In divorce and legal separation proceedings, upon the request of either party and *after the court determines the division or disbursement of property* under . . . [R.C.] 3105.171 . . ., the court of common pleas may award reasonable spousal support to either party.

(Emphasis added.) R.C. 3105.18(B). *See also* R.C. 3105.171(C)(3) ("trial courts "shall provide for an equitable division of marital property under this section prior to making any award of spousal support . . . under section 3105.18 . . . .").

-24-

{¶60} In turn, R.C. 3105.18(C)(1) contains a list of factors that a trial court is to consider in deciding the matter of spousal support. Since R.C. 3105.18(C)(1)(i) directs a trial court to consider "[t]he relative assets and liabilities of the parties," the division of property between the parties is a factor that affects the determination of spousal support. *Fordyce v. Fordyce*, 2011-Ohio-3406, ¶ 8 (7th Dist.). For this reason, a trial court will generally need to revisit an award of spousal support if the division of property is reversed on appeal. *Herman v. Herman*, 2021-Ohio-3876, ¶ 17 (3d Dist.); *O'Rourke v. O'Rourke*, 2010-Ohio-1243, ¶ 27 (4th Dist.).

Legal Analysis

{¶61} On appeal, Sean argues that the trial court should not have ordered him to pay spousal support while Toni argues that the amount of the spousal support award is inadequate.[4] However, under Sean's first assignment of error, we reversed the division of several assets between Sean and Toni. While the substance of their arguments are rendered moot by this prior determination, the trial court will need to revisit its spousal support award after adjusting the division of assets on remand. *Miller v. Miller*, 2017-Ohio-7646, ¶ 42 (6th Dist.); *Carmichael v. Carmichael*, 2012-Ohio-5811, ¶ 12 (9th Dist.); *Evans v. Evans*, 2025-Ohio-1470, ¶ 28 (10th Dist.). Thus, to the extent that the spousal support award must be reevaluated in

---

[4] We note that the trial court did reserve jurisdiction over the issue of spousal support in the order of legal separation in Hardin County Case No. 2017-3076-DRK.

-25-

light of the revised property division, Sean's fourth assignment of error and Toni's third assignment of error are sustained.

*Sean's Fifth Assignment of Error*

{¶62} Sean argues that the trial court should have provided for the appointment of a receiver to administer the sale of the marital residence in the event that Toni was unable to obtain refinancing.

Legal Standard

{¶63} "A receiver is in part defined as a 'fiduciary of the court, appointed as an incident to other proceedings wherein certain ultimate relief is prayed. He is a trustee or ministerial officer representing the [appointing] court . . . .'" *Koeblitz v. Koeblitz*, 2021-Ohio-2269, ¶ 16 (8th Dist.), quoting *State ex rel. Celebrezze*, 60 Ohio St.3d 69, fn. 4 (1991), quoting Black's Law Dictionary (6th Ed. 1990). "The primary purpose of a receiver is to carry out orders of the court." *King v. King*, 2013-Ohio-2038, ¶ 37 (11th Dist.).

{¶64} Under R.C. 2735.01, a receiver may be appointed by . . . the court of common pleas . . . [a]fter judgment, to carry the judgment into effect" or "to dispose of property according to the judgment." R.C. 2735.01(A)(4)-(5). *See Echols v. Echols*, 2022-Ohio-1719, ¶ 28 (11th Dist.); *Ratliff v. Ratliff*, 1998 Ohio App. Lexis 3614, *12 (10th Dist. Aug. 6, 1998). Receivers have been appointed in domestic relations cases when necessary to facilitate the sale of marital property. *King* at ¶

41 (A trial court appointed a receiver after a party to a divorce action failed to sell the marital residence in compliance with a court-ordered timeline.).

Standard of Review

{¶65} The appointment of a receiver is "an extraordinary, drastic and sometimes harsh power which equity possesses and is only to be exercised where the failure to do so would place the petitioning party in danger of suffering an irreparable loss or injury." *Jardine v. Jardine*, 2022-Ohio-1754, ¶ 11 (8th Dist.), quoting *Equity Ctrs. Dev. Co. v. S. Coast Ctrs., Inc.*, 83 Ohio App.3d 643, 649 (8th Dist. 1992). Since this matter involves the exercise of an equitable power, "[t]he decision of whether or not to appoint a receiver rests in the sound discretion of the court and will not be disturbed absent an abuse of that discretion." *Newcomer v. Newcomer*, 2013-Ohio-5627, ¶ 76 (6th Dist.).

Legal Analysis

{¶66} In the divorce decree, Toni was awarded the marital residence but had one year from the date of the final hearing on April 18, 2024 to obtain refinancing for the mortgage and home equity loan associated with this property. If she was unable to obtain refinancing by April 18, 2025, the divorce decree gave her until August 18, 2025 to sell the marital residence before the property would have to be sold at a public auction by October 31, 2025.

{¶67} On appeal, Sean argues that the trial court should have provided for the appointment of a receiver in the event that Toni was unable to obtain refinancing

within one year of the final hearing. He asserts that such a measure is necessary to ensure that the house is sold in a reasonable time and manner.

{¶68} However, the trial court ordered an arrangement that seeks to protect the interests of both parties to this action. The divorce decree relieves Sean of the responsibility to pay for the mortgage and any expenses related to the real estate after April 18, 2024. After assigning the marital residence a value of $301,000.00, the trial court awarded the house to Toni. The trial court then ordered Toni to pay Sean an equalization payment to offset the award of the marital residence. This overall framework provides incentives for the house to be sold in a reasonable time and for a reasonable price.

{¶69} In conclusion, Sean's arguments fail to establish that the trial court abused its discretion by failing to provide for the appointment of a receiver in the event that Toni did not obtain refinancing within the specified timeframe. *See Solomon v. Solomon*, 2022-Ohio-2262, ¶ 15 (8th Dist.).[5] Accordingly, Sean's fifth assignment of error is overruled.

*Sean's Sixth Assignment of Error*

{¶70} Sean argues that he should not have been ordered to reimburse Toni for the cost of refilling the propane tank at the marital residence as part of a ruling on a show cause motion that she filed to enforce the order of legal separation.

---

[5] We note that all of the dates in the divorce decree that form the timeline for the disposition of the marital residence had passed by the time that this appeal was heard on January 6, 2026. We cannot discern from the record whether any progress has been made towards refinancing or selling the house.

Legal Standard

**{¶71}** "A separation agreement is a contract between two parties and its validity is governed by contract law . . . ." *Jones v. Jones*, 2008-Ohio-6069, ¶ 25 (3d Dist.). However, once a trial court incorporates a separation agreement into a decree, "the separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such." *Ross v. Ross*, 2020-Ohio-5237, ¶ 28 (11th Dist.), quoting *Holloway v. Holloway*, 130 Ohio St. 214, 216 (1935). In other words, "the 'contract' becomes a 'court order' or 'judgment' . . . ." *C.B. v. B.B.*, 2025-Ohio-2219, ¶ 44 (8th Dist.).

**{¶72}** "Contempt proceedings constitute the inherent means by which courts enforce their lawful orders." *Hans v. Stedman*, 2005-Ohio-4819, ¶ 15 (10th Dist.).

> In a civil contempt proceeding, the movant bears the initial burden of demonstrating by clear and convincing evidence that the other party has violated an order of the court. . . . If the movant meets her burden, the burden shifts to the other party to either rebut the showing of contempt or demonstrate an affirmative defense by a preponderance of the evidence.

(Citations omitted.) *Starr v. Starr*, 2025-Ohio-5788, ¶ 26 (3d Dist.).

**{¶73}** If the non-moving party presents "a valid defense for non-compliance," the trial court is not required to hold a party in contempt for failing to abide by the terms of the prior court order. *Burge v. Burge*, 2016-Ohio-4658, ¶ 14 (7th Dist.). However, the fact that a party is not held "in contempt does not change

the . . . [prior court] order." *Burge* at ¶ 14. Thus, the non-moving party may still have a remaining obligation under the prior court order, even though this party was not held in contempt for his or her previous noncompliance. *Id.*

### Standard of Review

**{¶74}** "An appellate court will not reverse a trial court's decision in a contempt proceeding absent an abuse of discretion." *Stuber v. Stuber*, 2003-Ohio-1795, ¶ 19 (3d Dist.). As noted previously, an abuse of discretion is more than an error of judgment but is present when a decision is arbitrary, unreasonable, or unconscionable. *Heimann*, 2022-Ohio-241, at ¶ 85 (3d Dist.).

### Legal Analysis

**{¶75}** Sean raises two main arguments herein. The first addresses the trial court's resolution of a show cause motion filed by Toni. In this case, Sean signed a separation agreement that contained the following provision: "Husband shall also pay the propane bill upon notice that it needs to be filled." (Doc. 74). This separation agreement was then incorporated into the order of legal separation that was issued by the Hardin County Domestic Relations Court. In 2023, Toni filed a motion to show cause, alleging that Sean had failed to pay the costs of refilling the propane tank at the marital residence after she had provided proper notice.

**{¶76}** The parties gave testimony about this matter at the final hearing because the motion to show cause was still pending at this time. Toni presented evidence that she paid to have the propane tank refilled in 2023. In response, Sean

did not dispute that he was responsible for this cost. While he indicated that Toni had provided him with proper notice, Sean testified that he did not have the funds at that time to cover this expense.

{¶77} In deciding the show cause motion, the magistrate found that Sean failed to pay to have the propane tank refilled in 2023 and that Toni had paid $1,061.42 to cover this cost. However, the magistrate found that Sean was financially "unable to comply with the prior order" and that he should not, therefore, be found in contempt. (Doc. 140). Since Sean was still assigned this obligation under the order of legal separation, the magistrate concluded that he should reimburse Toni for the $1,061.42 that she spent on refilling the propane tank.

{¶78} On appeal, Sean asserts that, in adopting the magistrate's decision, the trial court was essentially imposing a spousal support obligation without considering the factors listed in R.C. 3105.18(C)(1). However, this obligation did not originate in the divorce decree issued in Hancock County but in the order of legal separation issued in Hardin County Domestic Relations Court. In turn, the order of legal separation imposed the terms of a separation agreement in which Sean had voluntarily assumed the responsibility for covering the costs of refilling the propane tank. Thus, the trial court was merely enforcing the terms of the order of legal separation for a cost that had already been incurred after a show cause motion had been filed by Toni.

{¶79} In summary, Sean admitted that he was responsible for this expense under the order of legal separation and that he did not fulfill this obligation in 2023. Toni then filed a show cause motion, seeking to have this portion of the order of legal separation enforced. Having examined the record, we conclude that the trial court did not abuse its discretion in resolving this show cause motion by directing Sean to pay Toni $1,061.42 as reimbursement for the costs of refilling the propane tank in 2023. Thus, Sean's first argument is without merit.

{¶80} Second, Sean argues that the trial court erred in handling a debt owed to Water Solutions that was incurred under a rental agreement for a water desulfurization system at the marital residence. At the time of the order of legal separation, the parties owed $4,735.60 to Water Solutions. However, the rental agreement with Water Solutions still existed as an "ongoing bill" in 2024. (Tr. 223). For this reason, the trial court had to allocate any debt with Water Solutions that had accrued under the rental agreement through the time of the divorce hearing.

{¶81} Under the terms of the separation agreement, Sean was to "provide his best efforts to make payments on [a list of] . . . overdue debts, so long as he can." (Doc. 74). Included in this list was the $4,735.60 sum that the parties owed to Water Solutions. After making Sean responsible for paying the mortgage and the home equity loan, the separation agreement stated that Toni was responsible for "pay[ing] all other household bills, except those addressed hereafter." (Doc. 74). The separation agreement then expressly assigned the following household expenses to

Sean: refilling the propane tank, pumping the septic tank, and paying for two-thirds of the costs of any home repairs.

{¶82} The costs of renting the water desulfurization system for the marital residence were not a household expense that was assigned to Sean under the separation agreement. Since Toni was responsible for household bills that were not assigned to Sean, the ongoing payments on the rental agreement with Water Solutions became her responsibility after the order of legal separation became effective in 2017. But in allocating the Water Solutions debt that existed at the time of the final hearing, the trial court ordered Sean to pay the portion of this obligation that had accrued through the filing of the divorce complaint on December 19, 2022. Toni was then made responsible for any portion of this obligation that had accrued under the rental agreement after December 19, 2022.

{¶83} Because of the division of household expenses in the separation agreement, Toni should have been responsible for any portion of the debt with Water Solutions that was incurred under the rental agreement after the terms of the separation agreement became effective in 2017. Since Sean was made responsible for the debts incurred under this rental agreement through December 19, 2022, we reverse the portion of the order that addresses the debt to Water Solutions.

{¶84} On remand, the trial court will need to determine what portion of the debt with Water Solutions was incurred under the rental agreement as a household expense after the terms of the separation agreement became effective in 2017. The

trial court will then need to reallocate the Water Solutions debt between the parties. Thus, the second argument herein is well-taken. Accordingly, Sean's sixth assignment of error is sustained to the extent that it addresses the allocation of the Water Solutions debt.

*Toni's Second Assignment of Error*

{¶85} Toni argues that the trial court erred in setting the amount of her equalization payment to Sean at $66,002.22.

Legal Standard

{¶86} In a divorce proceeding, a trial court is to "classify the assets of the parties as marital or separate." *Kesler v. Kesler*, 2018-Ohio-5059, ¶ 8 (3d Dist.). In general, the separate property is awarded to the party that owns the asset while the marital property is divided between the parties. *Worden v. Worden*, 2017-Ohio-8019, ¶ 14 (3d Dist.). Under R.C. 3105.171(C), marital property is to be divided equally between the parties unless such a distribution would be inequitable. *Devito v. Devito*, 2024-Ohio-2234, ¶ 13 (1st Dist.).

{¶87} In dividing the marital property, a trial court is to consider the factors set forth in R.C. 3105.171(F). This list of factors includes "[t]he duration of the marriage"; "[t]he assets and liabilities of the spouses"; and "[a]ny retirement benefits of the spouses . . . ." R.C. 3105.171(F)(1), (2), (9). Further, a trial court may order a party to make an equalization payment to bring the distribution of assets into an equitable balance. *Stewart v. Stewart*, 2025-Ohio-1635, ¶ 54-57 (1st Dist.).

Legal Analysis

{¶88} On appeal, Toni challenges the order directing her to make an equalization payment of $66,002.22 to Sean. She again asserts that, by excluding most of Stefko's report and testimony, the trial court ended up overvaluing the marital residence and consequently ordered an inflated equalization payment to balance the award of the house to her. In deciding Toni's first assignment of error, we concluded that the trial court did not err in largely excluding Stefko's report and testimony. Thus, to the extent that she argues the trial court erred in determining the value of the marital residence, Toni's argument herein is without merit.

{¶89} However, under Sean's first assignment of error, we concluded that the trial court erred in the process of classifying several assets. The reclassification of these assets on remand will affect the distribution of property between the parties and the considerations that supported the trial court's decision to order an equalization payment in the amount of $66,002.22. For this reason, the trial court must revisit the equalization payment after adjusting the allocation of assets in accordance with this opinion. To the extent that the equalization payment was affected by the misclassification of several assets, Toni's second assignment of error is sustained.

*Toni's Fourth Assignment of Error*

{¶90} Toni asserts that the trial court erred by ordering her to pay the costs of the guardian ad litem fees.

Legal Standard

**{¶91}** A "trial court has discretion over the amount of the guardian ad litem fees, as well as the allocation to either or both of the parties." *Hitchcock v. Hitchcock*, 2025-Ohio-2668, ¶ 51 (5th Dist.). GAL "[f]ees may be allocated based on the parties' litigation success and economic status." *Ehrmantrout v. Ehrmantrout*, 2024-Ohio-1328, ¶ 52. In apportioning GAL fees, a trial court may also consider "which party caused the work of the guardian ad litem." *Strauss v. Strauss*, 2011-Ohio-3831, ¶ 77 (8th Dist.).

**{¶92}** Similarly, a trial court has the discretion to determine the proper allocation of court costs between the parties. *Ehrmantrout* at ¶ 52. For this reason, a trial court's determination as to the proper allocation of GAL fees or court costs will not be reversed on appeal in the absence of an abuse of discretion. *Id*. at ¶ 52, 64. *See also Strauss* at ¶ 79. More than an error at judgment, an abuse of discretion is present where a decision is unreasonable, arbitrary, or unconscionable. *Freytag*, 2024-Ohio-2403, at ¶ 8 (3d Dist.).

Legal Analysis

**{¶93}** In this case, the trial court appointed a GAL pursuant to a "joint oral motion of Plaintiff and Defendant . . . ." (Doc. 94). The GAL fees of $420.00 were then paid entirely with the funds from Sean's $600.00 deposit. Since Sean's deposit was used to pay the GAL fees of $420.00, the magistrate directed Toni to pay the

first $420.00 of court costs. The remaining courts costs were then to be divided equally between the parties.

{¶94} Toni objected to this allocation of the GAL fees on the grounds that Sean had initially requested the GAL. She also asserts that the work performed by the GAL was rendered unnecessary when Sean withdrew his motion for reasonable parenting time and requested that the GAL be discharged. On appeal, she argues that Sean should be responsible for the GAL fees.

{¶95} However, in his decision, the magistrate summarized several comments that the GAL made about the investigation at the final hearing as follows:

> Due to scheduling issues with Defendant, the GAL was unable to meet with the child. Without Defendant's cooperation, and with Defendant's failure to produce the child, the Guardian ad Litem could not prepare a report or provide informed recommendations.

(Doc. 140). The GAL also indicated that she was not given an opportunity to schedule an interview until after Sean withdrew his motion and was never able to have any discussions with the minor child. The magistrate then found that Toni had "failed to cooperate with the investigation." (Doc. 140).

{¶96} After reviewing the findings of the magistrate, the trial court approved the magistrate's decision on this issue. We note that, under this arrangement, each party was responsible for making a $420.00 payment towards different expenses before the remaining court costs were divided equally between them. Thus, each

party was ultimately made responsible for one half of the total amount of GAL fees and court costs that were incurred in this case.

{¶97} In summary, the record indicates that the parties jointly requested a GAL. Since Sean had already paid for the GAL fees of $420.00, the trial court directed Toni to pay the first $420.00 of court costs. Having examined the record, we conclude that Toni has failed to demonstrate that the trial court abused its discretion by ordering an arrangement that essentially divided the GAL fees and court costs equally between the parties. Accordingly, Toni's fourth assignment of error is overruled.

*Conclusion*

{¶98} Having found no error prejudicial to appellant Sean Young in the particulars assigned and argued in his second, third, and fifth assignments of error, the judgment of the Domestic Relations Division of the Hancock County Court of Common Pleas is affirmed as to these issues. Having found error prejudicial to the appellant in the particulars assigned and argued in his first, fourth, and sixth assignments of error, the judgment is reversed as to these issues.

{¶99} Having found no error prejudicial to cross-appellant Toni Young in the particulars assigned and argued in her first and fourth cross-assignments of error, the judgment of the Domestic Relations Division of the Hancock County Court of Common Pleas is affirmed as to these issues. Having found error prejudicial to the

cross-appellant in the particulars assigned and argued in her second and third cross-assignments of error, the judgment is reversed as to these issues.

**{¶100}** This cause of action is hereby remanded for further actions consistent with this opinion.

*Judgment Affirmed in Part*
*Reversed in Part*
*And Cause Remanded*

**ZIMMERMAN, P.J. and WALDICK, J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, it is the judgment and order of this Court that the judgment of the trial court is affirmed in part and reversed in part with costs assessed equally between Appellant and Appellees for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  *See* App.R. 30.

_____
John R. Willamowski, Judge


_____
William R. Zimmerman, Judge


_____
Juergen A. Waldick, Judge

DATED:
/hls